98 N.J. Super. 570 (1968)
238 A.2d 185
MOREIRA CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF WAYNE, A BODY POLITIC, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1967.
Decided January 19, 1968.
*571 Before Judges CONFORD, COLLESTER and LABRECQUE.
*572 Mr. George J. Kenny for appellant (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
Mr. Peter J. Van Norde for respondent.
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal by a contractor on a contract to build a trunk sewer line for the Township of Wayne, from an order of the Chancery Division denying a demand for arbitration (except in one minor respect) by plaintiff contractor of claims for extras against defendant municipality. The claims for extras amount to $325,862.71. Performance of the contract took three years, and we are informed that the basic contract price was $444,782.40. The last work on the job seems to have been done about October 1964.
Apparently, sometime during the summer of 1966 (or perhaps earlier; the date is not specified in the appendix) plaintiff submitted to defendant a detailed 75-page specification of extras wherein each item claimed is broken down as to labor, materials, use of equipment and the date of rendition. In each case, also, there is a general indication of the reason for the particular extra, e.g., "change on plans, moving * * * sewer closer to brook * * *"; "removal two lengths of 24" R.C.P. ordered by the engineer * * *"; "due to wrong line and grade furnished by engineer * * * time lost"; "due to stop order of January 24, 1962"; "2.755 MFBM ordered by engineer"; "due to a water service * * * which was not shown on plans * * * lost 5 hours * * *," etc.
This specification of extras is not contained in the appendix nor was it an item of evidence before the trial court (which, without objection by any party, decided the matter on the return of an order to show cause on the basis of the pleadings, affidavits and argument). We requested it at the oral argument in order to have some minimal understanding of the basic dispute on the merits.
*573 The contract is apparently a lengthy document not made an exhibit. Certain sections of it are incorporated in the affidavits. The arbitration clause, construction of which is the central issue on this appeal, is set forth on page 39 of the specifications and reads as follows:
"(a) Appeal by the Contractor  Should the Contractor take exception to any determination of, or revision by the Engineer relating to the interpretation of this contract, or the performance of work thereunder, the Contractor shall, within two (2) days, after receiving notification of such decision, or revision, file with the Owner a notice of appeal therefrom, together with a full statement of facts as he believes them to be true, and he shall also furnish the Engineer a copy of said notice and statement of facts.
Upon completion of the work, all matters of appeal shall be submitted to a Board of Referees composed of three members, one of whom shall be appointed by the Owner, one by the Contractor, and the third shall be chosen by the first two. The cost of appeal shall be borne by the Contractor in matters wherein the decisions of the Engineer are affirmed, and in other matters, the costs shall be borne jointly by the Contractor and the Owner in such proportion as the Board of Referees shall determine.
The decision of the Board of Referees shall be conclusive and binding upon both the Contractor and the Owner."
Defendant argued below, and Judge Mountain in the Chancery Division agreed (with the one exception referred to above), that none of the presently disputed extra items became subject to arbitration under the foregoing agreement because they were never made "matters of appeal" by plaintiff in the manner specified by the contract, and only such matters of appeal were made subject to arbitration by the agreement of the parties. Plaintiff, on the other hand, argues that the question whether the disputed items are, indeed, "matters of appeal," is itself for the arbitrators rather than the court, because defendant's claim that they do not fall within the clause constitutes an issue of "procedural arbitrability," which, it is asserted, is always for determination by the arbitrator rather than the court. Prime reliance is placed on Standard Motor Freight, Inc. v. Local Union No. 560, 49 N.J. 83 (1967), and certain *574 decisions of the United States Supreme Court, all discussed hereinafter.
The factual record before us is not too illuminative.
On October 4, 1966 defendant's attorney wrote to plaintiff's attorney stating the township's position on the claim for extras theretofore submitted by plaintiff, as noted above. The letter offered a total of $9,807.02 in settlement of certain items and rejected the claims for the balance. It called attention to the fact that $79,014.65 of the items claimed pertained to a railroad crossing as to which an enclosed copy of a letter from plaintiff to defendant's consulting engineers of August 9, 1962 had stated that the work could be done "without any additional cost to the Township of Wayne."
Plaintiff's attorney responded by letter of October 13, 1966 indicating he was construing the letter of October 4, 1966 as "the decision of the Owner * * * and a disposition of the Contractor's appeal from the Engineer's decision." Stating that the determination by the owner was not satisfactory, the letter went on to "invoke the further provisions of the Contract," but quoting only the second and not the first paragraph of the arbitration clause (a) quoted hereinabove.[1] Request was made that the owner select its "member" arbitrator so that the arbitration could be instituted.
Defendant's attorney responded to the demand by its letter of November 14, 1966, that it was the "Township's position that if there is a dispute as to the amount to be paid under a valid claim such a matter is one for arbitration" but that "if there is a denial as to the validity of the claim, then it is not a proper subject for arbitration." This was followed by the present action in which defendant has abandoned the rationale for its rejection of the arbitration stated in the November 14 letter and stands on its position, stated above, and formulated in its answer to the complaint, *575 that the parties have not by their agreement undertaken to arbitrate these claims.
The record shows only one instance in the course of performance of this contract wherein the contractual "Appeal by the Contractor" (arbitration clause of the contract) was invoked. This occurred when, on October 1, 1962, plaintiff wrote the consulting engineer demanding an increase in the contract price for stone and the request was disallowed by the latter in a letter informing plaintiff that if it took exception to the decision it could proceed under the "Appeal by the Contractor Clause." Plaintiff thereupon notified the defendant, "we hereby appeal pursuant thereto" (the clause on page 39 of the specifications). The order under appeal herein directs arbitration of the claim for stone, but for that item only.
Defendant's business administrator made an affidavit, which stands unrefuted by plaintiff, that plaintiff "has not established any matters of appeal" in accordance with the arbitration clause (presumably subject to an exception for the item of stone already mentioned). Plaintiff offers no proof or contention that it purported to establish any matter of appeal in the manner specified by the arbitration clause, except for its contention that its attorney's letter of October 13, 1966 to the defendant's attorney constituted a proper invocation of the clause.

I
It is elementary that a party to a contract is not obligated to submit a dispute arising under it to arbitration unless he has undertaken by his contract to do so; and it is inescapably the duty of the judiciary to construe the contract to resolve any disagreement of the parties as to whether they have agreed to arbitrate or as to the scope of the subject matter agreed to be arbitrated. 5 Am. Jur.2d, Arbitration and Award, § 11, p. 527; § 15, p. 531; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546, 84 S.Ct. 909, 11 *576 L.Ed.2d 898 (1964); Jersey Central Power & Light Co. v. Local Union No. 1289, etc., 38 N.J. 95, 103 (1962); Sussleaf-Flemington, Inc. v. Bruce, 84 N.J. Super. 599, 603 (App. Div. 1964); Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1935). While public policy favors the arbitration process, and contracts should be read liberally to find arbitrability if reasonably possible, there survives the principle that parties choosing not to submit to arbitration "have a right to stand upon the precise terms of their contract." Goerke Kirch Co. v. Goerke Kirch Holding Co., supra, 118 N.J. Eq., at p. 4. Nor do we have a right to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently to broaden the scope of arbitration in view of the nature of the subject matter of the contract, or indeed to make every dispute of any nature between the parties arising thereunder the subject of arbitration. Clauses of that universality of coverage are common in commercial agreements,[2] but conspicuously absent here.
It is at once apparent from a reading of the clause here involved that it neither is, nor is suggestive of an intent by the parties to have created it as the solvent for all controversies arising between the parties under the contract. For one thing, the owner can never invoke it; hence is remitted exclusively to judicial relief for any breach by the contractor. And the power of the contractor to invoke it is expressly rested on a carefully circumscribed set of conditions. It must first appear that the engineer has made some kind of "determination" or "revision" relating to the interpretation of the contract or the performance of work thereunder. The contractor must then be given "notification" *577 of the decision or revision, but the agreement does not specify, nor would the nature of this kind of extended construction operation suggest, that such notifications by the engineer had to be in writing. There were undoubtedly many oral "determinations" relating to the performance of the work from the engineer to the contractor. Within two days after being notified of an engineer's "decision" or "revision" the contractor must file a "notice of appeal" therefrom with the owner, together with a supporting statement of facts.
The reference, in the next paragraph of the arbitration provision, to the submission of "all matters of appeal" to a board of referees "upon completion of the work," is without question intended to refer to the "notices of appeal" filed by the contractor with the owner as specified in the preceding paragraph. To construe "all matters of appeal," as plaintiff argues, to encompass the generality of all grievances which the contractor may harbor at the time the work has been completed, and totally without reference to compliance with the preceding paragraph of the provision, would be not only to destroy the carefully formulated structure of the clause as a whole but to ignore its plain intent. That, as we see it, was to enable the owner and the engineer to make an on-the-spot evaluation of any complaint of the contractor concerning any decision by the engineer relating to the contractor's performance of the work, as it went along, with the idea of possible settlement of the complaint then and there, or, failing that, to put the owner on notice and thus enable it to be fully prepared as to the particular item when and if that and all other such "notices of appeal" should go to arbitration at the conclusion of the work.
It is clear to us that it is the duty of the court to make the foregoing interpretation and construction of the contract  not to remit it to arbitrators. It also becomes our duty to determine whether the whole or any part of the present $325,862.71 claim for extras (other than the matter of stone) is shown to be arbitrable under that construction of the contract.
*578 It should be apparent from the recital of facts, above, that plaintiff filed no appeals with the owner at or about the time (let alone "within 2 days") of any grievance arising from any particular directions, instructions or determinations concerning the work by the engineer, although it is obvious from plaintiff's 75-page specification of extras that very many such instances occurred. Plaintiff's is the burden of showing a right of arbitration under the agreement and to what extent, if any. So far as the record before us reveals, only two categories of potential extras were ever discussed by the parties as the job went along. One is the matter of increased cost of stone, where plaintiff made the matter one of appeal and arbitration, and arbitration accordingly was properly ordered by the trial court. The other pertained to changes in the projected location of pipe requested by the Erie-Lackawanna R.R. Co. (resulting in $79,000 of the claims for extras, as noted above). The engineer wrote plaintiff that he had no objection to the change, provided there was no additional cost to the municipality. Plaintiff wrote back August 9, 1962 that it would proceed as requested by the railroad "without any additional cost to the Township of Wayne." There is no later communication or discussion of any nature between the parties on this item, yet plaintiff argues that $79,000 of extras pertaining to that change are "matters of appeal" requiring arbitration. The position is thoroughly untenable. Plaintiff has not established any matters of appeal for arbitration under the contract beyond that allowed by the trial court.

II
What we have said in large measure disposes of plaintiff's contention that its attorney's letter of October 13, 1966 establishes the entirety of the claim for extras as a matter of appeal under the contract and therefore arbitrable. Aside from the fact that it was not submitted within two days from notification by defendant's attorney of its position on *579 the claim and does not contain a supporting factual statement, it obviously does not qualify as a "notice of appeal" or "matter of appeal" in compliance with the evident contractual intent of the arbitration clause discussed above. Under the arbitration clause a notice of appeal from a final decision by the owner is not a notice of appeal from a current decision by the engineer so as to make its subject matter an arbitrable matter of appeal. The terms "Engineer" and "Owner" are used in this clause discriminatingly, not interchangeably.
If the plaintiff's argument were accepted, and it thereby could, long after the completion of the work, make any and all claims then advanced for the first time "a matter of appeal" for arbitration, the entire plan and purpose of the arbitration clause would be subverted. It is a debatably tenable position only if the first paragraph of the arbitration section is ignored in its entirety and the section read as though it contained only the second paragraph. This we obviously cannot do.

III
Plaintiff contends that, apart from any of the considerations advanced above, defendant's invocation of the failure of plaintiff to make any particular grievance over an engineer's decision a matter of appeal by filing the required two-day notice of appeal creates an issue of "procedural arbitrability" which by force of recent decisions of the highest courts must itself be submitted for determination of merit to arbitration rather than be passed upon by the court if, as here, there is any kind of arbitration clause in the contract. We disagree.
For the stated argument plaintiff relies upon Standard Motor Freight, Inc. v. Local Union No. 560, supra, 49 N.J. 83, and federal cases cited therein. Two observations may be made preliminarily concerning these cases. First, they all involve labor collective bargaining agreements, controlled by "substantive federal labor law" even when brought *580 in a state court, wherein the functional emphasis upon absolute exclusivity of arbitration in resolution of labor disputes and grievances creates practically a "private law" of its own in that field. United Steelworkers of America, AFLCIO v. Warrior & G. Nav. Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The law of arbitration in the labor field is practically sui generis. Id., passim. In that area "[t]he clear thesis is that the judicial role should be a very limited one, considerably less even than the restricted court function in commercial arbitration matters," Standard Motor Freight, supra, at p. 95 (emphasis added). Second, the arbitration clauses in the labor contracts involved in these cases (1) were characteristically total or near-total in scope of coverage  in effect covering every dispute of any nature which might arise between the parties under the agreement except where specifically provided otherwise  as contrasted with the sharply restricted area of arbitration afforded by the text of the instant contract, and (2) vested full authority in the arbitrator to interpret the whole agreement as well as decide all issues arising thereunder.
In Standard Motor Freight a dispute arose as to which of several arbitration or grievance tribunals referred to under a collective bargaining agreement covering the metropolitanarea trucking industry had jurisdiction over a dispute concerning the termination of the employment of a union member. The agreement provided that if the dispute concerned a "matter of discharge" it would go for binding adjudication to the New Jersey State Board of Mediation; if not, then in the first instance to a joint local committee for final decision. If a tie vote resulted there the dispute was to go to a joint area committee, which would decide the matter unless it, too, deadlocked, in which event it could go to an umpire if so decided by a majority of the committee; otherwise the contract ceased to be effective in the matter. In addition to this decisional function the joint area committee was to act as final authority, except as *581 otherwise provided in the section governing settling of grievances, "on all matters involving questions of the meaning or import of any clause or provision of this Agreement, decisions which would have general application to the majority of Employers and Local Unions who are parties to this Agreement." Id., at pp. 89-90; emphasis ours. The question which ultimately engaged the attention of the Supreme Court was as to what tribunal had the authority under the contract to decide what was a "matter of discharge" in a particular dispute over an employee's termination so as in turn to control whether the adjudication of the dispute would take place before the Mediation Board or through the two-step intra-industry settlement machinery. The preliminary question was whether the courts had the power to decide the first issue  i.e., whether the particular dispute concerned a matter of discharge. The holding of the Supreme Court was in the negative, upholding a reversal of a trial court decision that the issue was for the court. The determination was that the joint area committee had jurisdiction to determine that question and thereby, consequentially, also that as to whether the underlying dispute would go to the Mediation Board or through the two-step intra-industry grievance machinery.
Influencing these determinations were (a) stress on the broad power reposed by the agreement in the joint area committee "to act as final authority on all questions involving the meaning or import of any clause or provision of the entire agreement * * *" (49 N.J., at pp. 98-99), as well as its provision that "all decisions of Joint Local Committees on all matters pertaining to the interpretation of this Agreement * * * shall automatically be reviewed by the Joint Area Committee" (emphasis by Supreme Court) and, further, for the power of review of such questions on the joint area committee's own initiative, (49 N.J., at p. 90); (b) the fact that the parties agreed that the ultimate dispute was arbitrable by one of the forums specified in the agreement rather than by the court, and (c) that the matter, *582 involving construction of a collective bargaining agreement subject to controlling federal law, rendered it significant, under the controlling decision in John Wiley & Sons, Inc. v. Livingston, supra, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (a labor arbitration case) that the particular issue was one of "procedural arbitrability"  a type of issue there held to be for the arbitrator, not the court, once substantive arbitrability was decided by the court to exist.[3]
Since, in the case before the court in Standard Motor Freight, it was agreed by all the parties that the underlying dispute was substantively arbitrable by one of the arbitration or grievance tribunals designated by the agreement, not for decision by the court, the question as to which one of these tribunals had jurisdiction was, in the view of the court, a procedural rather than substantive matter and therefore not for decision by the court but rather by that grievance tribunal which under the agreement was vested with final power to decide any question of interpretation arising under the agreement and of the "meaning or import of any clause of the Agreement"  here the joint area committee.
It seems to us self-evident that in all three of the respects noted above the present case is distinguishable from Standard Motor Freight and therefore requires determination independently of that decision and of the principles it elucidates. This is not a labor collective bargaining agreement; it is not agreed by the parties, or a fact, that the agreement provides that any question arising under it or involving its interpretation is vested for decision in arbitrators; and the parties are not in agreement that these particular claims for extras are substantively arbitrable under the agreement.
*583 Plaintiff has simply not shown that the express conditions or stipulations set forth in the contract for arbitrability of the particular claims here advanced by it have been met, and it serves no relevant purpose, in the present context, whether the matter of satisfaction of those conditions and stipulations is to be described as procedural or substantive, although we regard it as intended by the draftsmen of the agreement to be substantive. The issue of noncompliance with the conditions and stipulations for arbitrability in this case goes to the heart of the contractual right vel non to arbitrate, and is for decision by the court, not the arbitrators, since none of the special distinguishing features of the Standard Motor Freight case discussed above is here present. Therefore we must follow the general rule that it is for the court to decide upon the arbitrability of a dispute under a contract.
Judgment affirmed.
NOTES
[1] Plaintiff does not dispute that the entirety of clause (a) constitutes the arbitration agreement of the contract.
[2] See, e.g., the clause in the lease involved in Sussleaf-Flemington, Inc. v. Bruce, supra, 84 N.J. Super., at p. 601: "Controversies of any kind relating to this agreement shall, at the option of either party hereto, be settled by arbitration in New York, N.Y. in accordance with the rules then obtaining of the American Arbitration Association."
[3] The collective bargaining agreement called for arbitration after exhaustion of two prior steps in the grievance machinery. The court held it was for the arbitrator to decide whether the party demanding arbitration had complied with the two prior steps, 376 U.S., at pp. 557-558, 84 S.Ct. 909. The court emphasized the collective bargaining nature of the controversy (at p. 550, 84 S.Ct. 909) and the national policy favoring arbitration therein.