GARDEN STATE PROPANE GAS COMPANY, PLAINTIFF, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, IBT, LOCAL NO. 863, AND HARRY FERRONE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided November 30, 1977.

*Mr. Stuart C. Nisenson* for plaintiff.

*Mr. Donald B. Ross, Jr.* for defendants (*Messrs. Zazzali, Zazzali & Whipple,* attorneys).

POLOW, J. S. C. Defendant Ferrone, a member of defendant Local, an affiliate of the International Brotherhood of Teamsters, was employed by plaintiff, Garden State Propane Gas Company. On August 8, 1977 plaintiff discharged Ferrone who thereafter sought arbitration based upon his claim that the discharge was without "just cause or reason" and hence violates the terms of the employment agreement in effect at that time. Garden State seeks to restrain arbitration until the court determines whether the discharged employee has complied with certain alleged contractual preconditions requiring a written grievance to be filed within two working days of the discharge. Defendants insist that question is for the arbitrators under the contract. The employer argues that the employee's failure to comply with the aforementioned procedural requirement of the contract deprives Ferrone of recourse to arbitration and that the controversy here is thus solely for the court's determination.

The function of the court in such a dispute is to determine whether the employment contract in question on its face is within the area of competence of the arbitrators. *Wiley & Sons v. Livingston,* 376 *U. S.* 543, 84 *S. Ct.* 909, 11 *L. Ed.* 2d 898 (1964); *United Steelworkers v. American Mfg. Co.,* 363 *U. S.* 564, 80 *S. Ct.* 1343, 4 *L. Ed.* 2d 1403 (1960); *Operating Engineers v. Flair Builders,* 406 *U. S.* 487, 92 *S. Ct.* 1710, 32 *L. Ed.* 2d 248 (1972); *Battle v. General Cellulose, Co.,* 23 *N. J.* 538 (1957); *Dist. 65, R.W.D.S.U. v. Paramount Surg. Supply Co.,* 117 *N. J. Super.* 125 (App. Div. 1971). Plaintiff, however, claims that before arbitration is available the preconditions contained in the employment agreement must be met.

Article VIII of the employment contract provides for discipline and discharge in the following language:

The Employer retains the right to discipline or discharge employees for just cause or reason. In the event the employee or the Union questions the disciplinary action or discharge, he or it shall file a written grievance with the Employer concerning the same within two (2) working days of the imposition of the discipline or dis-

charge. If a grievance is properly filed, the same shall be processed in accordance with the grievance and arbitration provisions of this Agreement. The Union steward or officer in the plant will be given notice of any discipline or discharge.

Garden State asserts that neither the Local nor Ferrone complied with Article VIII in that no grievance concerning the discharge was filed within two working days after the imposition of the discharge.

Defendant relies substantially on *Operating Engineers v. Flair Builders, supra,* arguing that the alleged failure to comply with the two day requirement is analogous to the claim of laches.

In *Flair Builders,* although the agreement provided for arbitration of "any difference * * * between the parties hereto which cannot be settled * * * within 48 hours of the occurrence," the application for arbitration was not filed until five years after the incident.

I cannot agree that the circumstances of *Flair Builders* and those of the instant case are analogous. Laches is an inexcusable delay in bringing suit, coupled with prejudice to the party against whom the claim is asserted. *McLaughlin v. Dredge Gloucester,* 230 *F. Supp.* 623 (D. N. J. 1964) *Finley v. U. S.,* 130 *F. Supp.* 788 (N. J. 1955); *Good v. Lackawanna Leather Co.,* 96 *N. J. Super.* 439 (Ch. Div. 1967).

Here plaintiff does not rely on laches based upon unjustifiable delay; rather, Garden State contends that there is a contractual precondition to the right to arbitrate, that is, the filing of a grievance in writing within two working days of the discharge. This argument is substantially different from that with which *Flair Builders* was concerned.

More in point is *Moreira Constr. Co., Inc. v. Wayne Tp.,* 98 *N. J. Super.* 570, 572 (App. Div. 1968), wherein a contract between the municipality and a contractor provided for arbitration of certain disputes and contained this provision: "The Contractor shall, within two (2) days after receiving notification * * * file with the Owner a notice of

appeal therefrom * * *." The court held that dispute not subject to arbitration because of the failure to comply with the two-day requirement, and since the two-day notice requirement must be met before there arises a contractual right to arbitrate, such rights were held determinable by the court, not the arbitrator.

Defendants contend that *Moreira* is simply inapplicable here because *Moreira* concerns commercial arbitration. The present case concerns arbitration of a labor dispute. The policy considerations applicable in purely commercial disputes are distinct from those in labor disputes. The United States Supreme Court, in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 *U. S.* 574, 80 *S. Ct.* 1347, 4 *L. Ed.* 2d 1409 (1960) explains:

* * * [T]he run of arbitration cases, illustrated by *Wilko v. Swan*, 346 U. S. 427, 74 S. Ct. 182, 98 L. Ed. 168, becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself. [at 578, 80 *S. Ct.* at 1351]

Indeed, our Supreme Court has interpreted that decision in the following language:

The clear thesis is that the judicial role should be a very limited one, considerably less even than the restricted court function in commercial arbitration matters. [*Standard Motor Freight Inc. v. Local Union No. 560*, 49 *N. J.* 83, 95 (1967)]

In *Wiley & Sons v. Livingston, supra,* the court considered whether a particular grievance was subject to arbitration when a three-step preliminary procedure required by the

labor agreement had : not been complied with; more particularly, as here, whether the procedural issue was to be decided by the court or by the arbitrator. The Court of Appeals, quoting from *Local 174, Teamsters v. Lucas Flour Co., 369 U. S. 95, 82 S. Ct. 571, 76 L. Ed. 2d 593 (1962),* had held that the issue was to be decided by the arbitrator. *Livingston v. John Wiley & Sons, Inc., 313 F. 2d 52, 63 (2 Cir. 1963):*

\* \* \* [W]ere we to decide that procedural questions under an arbitration clause of a collective bargaining agreement are for the court, we would open the door wide to all sorts of technical obstructionism. This would be completely at odds with the "basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare." [at 63]

The Supreme Court restated that proposition:

[W]e think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play. [*Wiley & Sons, supra, 376 U. S.* at 559–560, 84 *S. Ct.* at 919.]

I think it is interesting to note that in *Moreira,* which was decided later, the court noted that *Wiley* involved collective bargaining and emphatically noted that the *Moreira* dispute did not involve a "collective bargaining" agreement. *Id.* at 582, 84 *S. Ct.* 909.

The instant controversy does involve a collective bargaining agreement. The only issue to be decided by the court in labor dispute cases of this kind is whether the dispute is related to a subject matter which the parties have contractually agreed to submit to arbitration.

In *United Steelworkers v. American Mfg. Co., supra,* the court ruled:

\* \* \* [T]he judicial inquiry \* \* \* must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. \* \* \* An order to arbitrate a particular grievance should

not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. [363 *U. S.* at 582–583, 80 *S. Ct.* at 1353]

This court cannot say with positive assurance that the arbitration clause in the case before it is not susceptible of an interpretation covering this particular dispute.

I am satisfied that the issue of the propriety of the discharge of this particular employee is within the scope of the arbitrators and within that scope also lies the question of whether or not the conditions precedent, if they be such, have been met.

Therefore, the court will not decide the issue and will allow the arbitration process to proceed. Application for injunctive relief denied.