171 N.J. Super. 397 (1979)
409 A.2d 806
BRICK TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A BODY POLITIC ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DIVERSIFIED R.B. & T. CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT,
v.
AMERICAN ARBITRATION ASS'N, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1979.
Decided December 11, 1979.
*399 Before Judges LORA, ANTELL and PRESSLER.
Thomas S. Cosma argued the cause for appellant (Connell, Foley and Geiser, attorneys; Theodore W. Geiser, of counsel).
Michael E. Cunningham argued the cause for respondent Brick Township Municipal Utilities Authority (Starkey, Kelly, Cunningham and Blaney, attorneys).
*400 Respondent American Arbitration Ass'n did not file brief.
The opinion of the court was delivered by LORA, P.J.A.D.
Diversified R.B. & T. Construction Co., Inc. (Diversified) appeals from a final judgment entered in the Chancery Division permanently enjoining and restraining it from arbitrating a claim against Brick Township Municipal Utilities Authority (BTMUA) for additional costs for realignment of an effluent line on a construction project because its demand for arbitration was filed out of time.
BTMUA and Diversified entered into a contract on March 22, 1976 for the construction of a pumping station. A dispute arose as to additional compensation which Diversified claimed it was owed as a result of alleged dewatering problems and misalignment of piping on the project site.
The contract, apparently due to its length, was not made an exhibit but certain clauses of the contract were before the trial court. Article III provides that such claims be submitted, in the first instance, to the engineer for his approval. Accordingly, Diversified, by letters dated April 24, 1978 and May 22, 1978, requested BTMUA's engineers, Fellows, Read and Weber (FRW), to pass on the aforesaid claims.
FRW, by letters dated May 1, 1978 and May 25, 1978, rejected Diversified's claims. On July 10, 1978 Diversified mailed a petition and a demand for arbitration to the American Arbitration Association (AAA), which had been designated by the contract for arbitration.
Article III further provides that either the owner or the contractor may demand arbitration with respect to any claim, dispute or other matter that has been referred to the engineer within 30 days of the engineer's written decision thereon. The trial judge found that the demand for arbitration had been *401 untimely made and that there was no issue of estoppel in light of the particular facts and circumstances of the case.
Diversified contended below, as it does on appeal, that the conduct of BTMUA amounted to a waiver of the 30 day contractual limitation period for arbitration; that BTMUA was estopped from raising the contractual provision as a defense and that the trial judge applied an incorrect standard in determining that there was no basis to invoke the equitable doctrine of estoppel.
In support of its position, Diversified asserts that it was in constant communication with BTMUA during the period from July 11, 1978, the date of the filing of the demand for arbitration, and September 12, 1978, the date upon which the arbitrators first convened. It also argues that the letter received from the engineer allegedly rejecting Diversified's claims was vague and ambiguous and did not constitute a rejection of the claim here involved. Furthermore, Diversified states that BTMUA's failure to review the contract during that period and its asserting the clause as a defense nearly a month later when it became aware of the 30-day clause in the contract, resulted in Diversified's expending engineering fees in preparation for the arbitration hearing.
The threshold question is whether the engineer's letter was an unconditional and unequivocal rejection of Diversified's claim, thereby triggering the 30-day contractual limitation period. The trial judge had no difficulty in finding the May 25, 1978 letter unambiguous and on its face a written final determination of the claim. We agree and perceive no merit in Diversified's contention that paragraph three of the letter, which stated "a settlement of this claim along the lines of the attached estimate is recommended," converted what is otherwise a final decision into a mere proposal. Obviously, the recommendation referred only to the manner in which the amount due under Item 1 would be allowed but it did not affect the finality of the disallowance of Item 2 which is the subject of this complaint.
*402 That Diversified itself so read the letter is indicated by the fact that its only response thereto was its filing of the demand for arbitration a month and a half later. Clearly, if it had regarded the May 25 letter as a stage in negotiation, it would have responded in kind. Its demand for arbitration demonstrates that it saw no reason for further negotiation and regarded the May 25 letter as final.
The arbitration provision of the contract provided that "no demand for arbitration shall be made later than thirty (30) days after the date which the engineer rendered his written decision ...," and "the failure to demand arbitration within said thirty (30) day period shall result in the engineer's decision being final and binding...."
An arbitration agreement is to be construed according to the usual methods of contract interpretation whereby a mutual, reasonable and meaningful design is sought from the language used by the parties and maximum effect is given to their intention. Keppler v. Terhune, 88 N.J. Super. 455, 462 (App.Div. 1965); Wm. J. Burns, etc., Inc. v. N.J. Guards Union, Inc., 64 N.J. Super. 301, 307 (App.Div. 1960). While public policy favors the arbitration process, and contracts should be read liberally to find arbitrability if reasonably possible, there survives the principle that the authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, and no further. Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1, 4-5 (E. & A. 1934). The parties have a right to stand upon the precise terms of their contract. Nor do we have a right to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently. Moreira Constr. Co., Inc. v. Wayne Tp., 98 N.J. Super. 570, 576 (App.Div. 1968).
It is well settled that where a contract provides that a demand for arbitration must be filed within a stated time and *403 the party desiring arbitration permits the agreed period to pass without making demand, he waives his right to arbitration. See, generally, Jordan v. Friedman, 72 Cal. App.2d 726, 165 P.2d 728, 729 (D.Ct.App. 1946) (holding that where a general contractor who did not file a demand for arbitration until three months after stated time had lapsed, waived his right to arbitration); Broadway-Fortieth St. Corp. v. President and Directors of Manhattan Co., 296 N.Y. 165, 71 N.E.2d 451, 452 (Ct.App. 1947) (holding that where no steps initiating arbitration where taken until after expiration of the dates specified in the agreement and there was no extension of time and no waiver, no valid award could be made and petitioner was not entitled to an order directing arbitration); Dickens v. Pennsylvania Turnpike Comm'n, 351 Pa. 252, 40 A.2d 421, 423 (Sup.Ct. 1945) (holding that where a provision in a turnpike construction contract that reference of question in dispute must be made within 30 days after final quantities were determined, was condition precedent to arbitration, and where dispute was not submitted within 30 days, contractor was not entitled to arbitration); Reynolds Jamaica Mines v. La Societe Navale Caennaise, 239 F.2d 689, 694 (4 Cir.1956) (holding that where the parties had agreed that all disputes would be submitted to arbitration, and had limited their right to arbitration to a period of 30 days, then the agreement reasonably construed means that unless a dispute of this character arose within 30 days of delivery, and arbitration was sought within the same time, the parties were to be left where they found themselves; to hold otherwise would be to rewrite the contract without power to renegotiate its terms); Application of Duke Laboratories, 9 Misc.2d 779, 168 N.Y.S.2d 998, 1000 (Sup. Ct. 1957) (holding that since respondent failed to make a formal demand for arbitration as required by the contract and the demand was served more than six months after the time to demand arbitration had expired, arbitration of the two disputed items was barred); Board of Education, etc. v. Bernard Associates No. 3, 230 N.Y.S.2d 509 (Sup.Ct. 1962) (holding that where the demand for arbitration was some seven weeks after the date *404 the architect's rejection was effective and the provision in the arbitration contract provided such demand be made within ten days, the demand for arbitration was not timely made  such demand being a condition precedent to arbitration. See, also, Mitchell v. Alfred Hofmann, Inc., 48 N.J. Super. 396, 406 (App. Div. 1958) (holding that performance within a reasonable time is implied when the contract does not contain any express time limitation within which the arbitrators are to act); Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 167 (App. Div. 1974) (holding that an arbitration clause in a contract will be enforced according to its tenor, and the terms thereof will not be rewritten by the court for the benefit of either party).
In the instant case the contract fixed a time limitation within which either the owner or the contractor could demand arbitration. It follows that the intention of the parties should be effectuated, unless BTMUA is estopped from asserting the 30-day contract limitation clause.
The remaining question, then, is whether on the facts in this record BTMUA should be estopped from asserting the contract clause limitation.
As to the question of estoppel, the essential elements of this defense, as stated by then Judge (now Justice) Pashman in Clark v. Judge, 84 N.J. Super. 35 (Ch.Div. 1964), are:
(1) Conduct amounting to a representation or a concealment of material facts.
(2) Facts known to the party allegedly estopped, or at least the circumstances must be such that knowledge of them can be necessarily imputed to him.
(3) The truth concerning the facts must be unknown to the party claiming the estoppel at the time when acted upon by him.
(4) The conduct must be done with the intention that it be acted upon by the other party.
(5) The conduct must be relied upon by the other party, and he must be led to act upon it.
(6) He must in fact act upon it in such a manner as to change his position for the worse. [at 54]
*405 See Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 474 (Ch.Div. 1961); State v. United States Steel Corp., 22 N.J. 341, 358 (1956); Omrod v. Civil Service Dep't, 151 N.J. Super. 54, 59 (App.Div. 1977). Application of the foregoing principles in light of Diversified's listed factors, which it contends call for the invocation of an estoppel against BTMUA, leads to the conclusion that the record does not reflect sufficient facts to establish an estoppel.
Concededly, BTMUA did not file the "permitted" response to Diversified's petition for arbitration. However, the arbitration rules specifically provide that "a party upon whom a demand for arbitration is made may file an answering statement...." Clearly, a response by BTMUA in this regard, while certainly desirable, was not mandatory and any reliance thereon by Diversified was neither justified nor reasonable.
As to the continuous course of communication between the parties between July 11, 1978 and September 28, 1978, it should be pointed out that such conduct does not, of itself, give rise to an estoppel. In a similar case, Application of Trimount Clothing Co., Inc., 112 N.Y.S.2d 814 (1952), the New York Supreme Court was concerned with whether petitioner was precluded from relying on the provision of a contract that no arbitration should be initiated after one year from the date of the contract, on the ground that petitioner had "lulled" the respondent into letting the limitation period expire by suggesting a continuance of negotiations. In this regard the court said:
I do not find this to be so from the record presented. In the view of the court the petitioner did nothing to lull the respondent into letting the limitation period expire. To lull, as here used and intended, means to intentionally disarm one, or to lure, beguile him into a position or situation in order for the actor to gain an advantage by reason thereof.
There is no warrant or basis or any justification for such a conclusion. The fact that one suggests a continuance of negotiations toward a possible adjustment or that protracted negotiations ensue, carries no implication of an ulterior purpose or motive. If, as here, they carry on beyond time limits fixed for taking certain *406 action and no adjustment results, it cannot be resorted to as a ground for preventing the running of the time and effectiveness of the bar.
See, also, Diesel Constr. Co. v. Stewart Tenants Corp., 33 Misc.2d 1090, 228 N.Y.S.2d 385, 387 (Sup.Ct. 1962) (holding that participation in the selection of arbitrators alone does not affect petitioner's right to move for a stay of arbitration on the ground that the claim sought to be arbitrated is barred by the statute of limitations).
The record does not support Diversified's allegation that it "incurred extensive expenses including a $4,000 study by soil engineers...." At oral argument below it was admitted that only a small part of that amount was attributable to the misalignment of the effluent line. Furthermore, the trial judge found that "the magnitude of the $4,000 really doesn't apply to the misalignment of the influent [sic] line or the denial of the issue under Paragraph Two...." Accordingly, it cannot be said that Diversified acted upon BTMUA's conduct in such a manner as to change its position for the worse.
Lastly, BTMUA's attendance at the September 12, 1978 hearing, which was adjourned due to the unavailability of one of the arbitrators, cannot be said to constitute conduct amounting to a misrepresentation or concealment of material facts. We are of the view that BTMUA's explanation for its failure to assert the contract limitation clause until September 12, 1978 because its counsel did not discover the provision in Article III of the contract until the day prior to the scheduled hearing, is reasonable.
In view of all of the foregoing, it is our conclusion that the judgment of the Chancery Division be affirmed.