631 A.2d 993

CASINO DISTRIBUTORS, INC., PLAINTIFF, v. TEAMSTERS LOCAL 331 AND THE AMERICAN ARBITRATION ASSOCIATION, PHILADELPHIA DIVISION, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided June 30, 1993.

*Alice B. Newman,* for Plaintiff (*Dunn, Pashman, Sponzilli, Swick & Finnerty,* attorneys).

*Walter H. De Treux* for Defendant Teamsters Local 331.

GIBSON, J.S.C.

This is a labor dispute in which plaintiff seeks to restrain defendant Union from arbitrating a grievance based on the claim

that the arbitration demand was untimely. To resolve that claim, it is first necessary to determine whether the timeliness issue should be decided by this court or by the arbitrators. Both parties agree that this threshold issue may be decided summarily. *R.* 4:67–2.[1]

## FACTUAL BACKGROUND

Plaintiff, Casino Distributors, Inc. (Casino) is a distributor of newspapers, magazines and sundries in the Atlantic City area. On September 8, 1992, Casino discharged one of its employees, David Carmen, allegedly for cause. Carmen is a member of the Teamsters Local 331 (Union) and is the beneficiary of a collective bargaining agreement (agreement) which includes a grievance procedure and an arbitration clause. Since the Union disputes plaintiff's claim that Carmen's discharge was for cause, it has invoked those provisions of the agreement.

On September 10, 1992, a grievance hearing was held in which the Union sought Carmen's reinstatement plus unused sick time and back pay. Casino refused to reinstate but did agree to pay, and did in fact pay, so-called liquidation wages. The Union was not satisfied and on September 14, 1992 it notified plaintiff of its intention to file for arbitration. A formal demand to the American Arbitration Association (AAA) was filed on September 28, 1992. Plaintiff responded by claiming that Carmen's acceptance of the liquidation pay constituted a settlement and that the request for arbitration was barred because the demand was filed outside the time limits set forth in the collective bargaining agreement.[2] This action followed.

---

[1] This opinion formalizes an earlier ruling from the bench.

[2] For purposes of this proceeding, plaintiff has not pressed its claim regarding a settlement and the only issue remaining is timeliness and the appropriate forum for deciding that issue.

## LEGAL CONCLUSIONS

■ The grievance procedure under the collective bargaining agreement contemplates a three-step process. All grievances must be initiated within five calendar days of the incident giving rise to the grievance. Only where the grievance remains unresolved after steps one or two may the matter be referred to arbitration. In such a case, the referral must be made within ten calendar days of the completion of step two (not counting weekends and holidays). Arbitrators are then selected in accordance with the procedures of the AAA.

Given the above, it is clear that the Union's initial invocation of the grievance procedure was timely. Plaintiff does not suggest otherwise. Nor does plaintiff deny that Carmen's discharge is an appropriate subject for arbitration. However, because the Union's demand to the AAA did not occur until September 28, 1992, two calendar days beyond the ten-day limit for "referrals," plaintiff claims that the demand was too late and that the right to arbitration was waived. In response, defendant claims that its September 14, 1992, notice advising plaintiff of the decision to arbitrate satisfied the terms of the agreement. Defendant also claims that even if its demand to the AAA is considered late, that would not constitute a waiver. Both sides agree that before these claims can be resolved, it is first necessary to determine whether the issues must be decided here or as part of the arbitration.

■ Generally it is for the courts, not the arbitrator, to decide whether parties are contractually obligated to arbitrate a particular dispute. *Board of Educ. of Bloomfield v. Bloomfield Educ. Ass'n,* 78 *N.J.* 144, 153–54, 393 *A.2d* 278 (1984); *Laborers' Int'l Union v. Foster Wheeler Corp.,* 868 *F.*2d 573 (3d Cir.1989). Such determinations, however, are usually limited to whether the grievant has asserted a claim which is fairly encompassed within the arbitration clause. *Clifton Bd. of Educ. v. Clifton Teachers Ass'n,* 154 *N.J.Super.* 500, 503–04, 381 *A.2d* 1226 (App.Div.1977). Although parties are bound only to the extent of their agreements and have a right to stand on the precise terms of those agree-

ments, public policy favors arbitration and contracts are to be read liberally to find arbitrability. *Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T. Constr. Co.,* 171 *N.J.Super.* 397, 402, 409 *A.*2d 806 (App.Div.1979).

State policy in this area is said to mirror federal law. *Moss H. Crane Mem. Hosp. v. Mercury Constr. Corp.,* 460 *U.S.* 1, 24–25, 103 *S.Ct.* 927, 941–42, 74 *L.Ed.*2d 765 (1983). It is also well settled that New Jersey courts will apply federal substantive law when deciding a labor arbitration issue. *Allwood Plumbing & Heating v. Local Union 274,* 199 *N.J.Super.* 517, 521, 489 *A.*2d 1243 (App.Div.1985). Based on the federal standard, a union may not be denied the right to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 *U.S.* 574, 582–85, 80 *S.Ct.* 1347, 1352–54, 4 *L.Ed.*2d 1409, 1417–19 (1960).

In this case, the clarity of the answer to the question of whether the arbitration clause may be fairly read to cover the "asserted dispute" depends on the manner in which the dispute is defined. For example, if the dispute is defined in terms of the propriety of Carmen's discharge, clearly that falls within the arbitration clause. If one defines the dispute in terms of whether defendant's referral of the grievance was timely, a closer question is posed. It is the judgment of this court, however, that no matter which of those definitions is used, the arbitration clause is fairly susceptible of an interpretation covering this dispute.

The terms of the clause are quite broad. They include disputes, complaints or questions of "any kind" arising under the agreement. Although certain defined steps must be taken before a grievance may be "referred" to arbitration, nothing in the agreement defines how a grievance is "referred." Nor is it clear from the agreement whether the parties intended the ten-day limit simply as a notice provision, as defendant argues, or whether it was intended to operate as if it were a statute of limitations. Plaintiff argues in favor of the latter and certainly the agreement

can be read that way. However, that is not the only possible reading. Nor is it clear what legitimate purpose would be served by such a reading, particularly in a case like this where the demand to the AAA came only two calendar days beyond the alleged deadline and where plaintiff was already on notice of the union's intention to arbitrate.

On the other hand, the real question is not whether the plaintiff's reading of this contract is more appealing or even which of the readings seems more logical. What is critical, is whether this court can say with "positive assurance" that the language of this agreement is not susceptible to the interpretation supporting arbitrability. *Ibid.* I cannot. Although certain New Jersey cases have articulated this test in terms of whether a reading supporting arbitrability is "reasonably possible," *Brick Tp. Mun. Auth. v. Diversified R.B. & T. Constr. Co., supra,* regardless of which standard is applied, my conclusion is the same.

A conclusion favoring arbitrability is also supported by a body of federal case law which holds that once it is determined that the underlying dispute is arbitrable, so-called procedural questions, including questions of timeliness, should be decided by the arbitrator. *See e.g., John Wiley & Sons, Inc. v. Livingston,* 376 *U.S.* 543, 84 *S.Ct.* 909, 11 *L.Ed.*2d 898 (1964). As the *Wiley* Court noted, "Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrators."

376 *U.S.* at 557, 84 *S.Ct.* 909, 11 *L.Ed.*2d at 909. Although not all of the circuits have followed this lead, the more persuasive federal decisions have, including those of the Third Circuit. *See e.g., Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehman Bros. Co.,* 625 *F.*2d 1092 (3d Cir.1980); *see also Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers' Internat'l Union, Local 4-447 v. Chevron Chemical Co.,* 933 *F.*2d 759 (9th Cir.1991); *Oil, Chemical and Atomic Workers' Int'l Union v. Chevron Chemical Co.,* 815 *F.*2d 338 (5th Cir.1987); *but see Local*

*Union 89 v. Moog Louisville Warehouse,* 852 *F.*2d 871 (6th Cir.1988); *United Steelworkers of America v. Cherokee Electric Coop.,* 829 *F.*2d 1131 (11th Cir.1987), *cert. denied,* 485 *U.S.* 1038, 108 *S.Ct.* 1601, 99 *L.Ed.*2d 915 (1988).

A typical example of the above analysis may be found in *Goss Golden v. Sheet Metal Workers, Local 104, supra,* where the court not only recognized the concept but specifically determined the issue of timeliness to be arbitrable. As observed there, "when time limitations and other procedural requirements are made an express part of the arbitration agreement, they become part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretative ability."

933 *F.*2d at 764 (quoting *Retail Delivery Drivers, Local 588 v. Servomation Corp.,* 717 *F.*2d 475, 478 (9th Cir.1983)). *See also Association of Flight Attendants AFL–CIO v. USAir, Inc.,* 960 *F.*2d 345, 349 (3d Cir.1992); *Chauffeurs, Teamsters & Helpers v. Stroehmann Bros., supra,* 625 *F.*2d at 1093.

Plaintiff nevertheless points to a number of New Jersey rulings involving commercial arbitration in which issues of "procedural arbitrability" have been resolved by the courts, not the arbitrator, including the issue of timeliness. *See e.g., Grover v. Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 403 *A.*2d 448 (1971); *Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T. Constr. Co., Inc., supra,* 171 *N.J.Super.* at 402–03, 409 *A.*2d 806, and cases cited therein; *Moreira Constr. Co. v. Wayne,* 98 *N.J.Super.* 570, 572, 238 *A.*2d 185 (App.Div.1968). *But see Mahoney–Troast Constr. Co. v. Supermarkets General Corp.,* 189 *N.J.Super.* 325, 331, 460 *A.*2d 149 (App.Div.1983). Contrary to plaintiff's argument, however, those rulings are unique to the field of commercial arbitration and have no applicability to labor disputes.

Unlike commercial arbitration, labor disputes involving collective bargaining agreements are controlled by substantive federal labor law where there is a "functional emphasis upon the absolute exclusivity of arbitration." *Moreira Constr. Co. v. Wayne, supra,* 98 (citing *N.J.Super.* at 580, 238 *A.*2d 185, *United Steelworkers of*

America, AFL–CIO v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 581, 80 S.Ct. at 1352, 4 L.Ed.2d at 1417). Indeed, arbitration in the labor field is said to be practically a "private law" of its own and "the clear thesis is that the judicial role should be a very limited one, considerably less ... than the restricted court function in commercial arbitration matters." Standard Motor Freight, Inc. v. Local Union No. 560, 49 N.J. 83, 95, 228 A.2d 329 (1967).

This distinction was specifically endorsed by our Appellate Division in Moreira Constr. Co. v. Wayne, supra, 98 N.J.Super. at 572, 238 A.2d 185. Although Moreira was not a labor dispute, the distinction between labor disputes and commercial arbitration was clearly the focus of the court. The same point has been made within the context of a labor dispute in Garden State Propane Gas v. Internat'l Bro. Team, 156 N.J.Super. 102, 105, 383 A.2d 473 (Chan.Div.1977). In Garden State the employer sought to restrain arbitration based on the employee's failure to file a written grievance within two days of his discharge. Like here, the employer argued that the late filing was fatal and that the timeliness issue should be determined by the court. Judge Polow, after first reiterating the distinction between commercial arbitration and labor disputes, concluded that since he could not say with "positive assurance" that the arbitration cause was not susceptible of an interpretation covering the dispute, the matter should proceed to arbitration including the question relating to timing. Id. at 107, 383 A.2d 473. The same reasoning applies here.

## CONCLUSION

Plaintiff's request to restrain the pending arbitration is rejected. Whether one analyzes plaintiff's claim within the context of the language of the collective bargaining agreement or based on the mandate in favor of referencing procedural questions to the arbitrator, the answer is the same. Since this is a labor dispute and the subject matter of the dispute is arbitrable, it is for the arbitrators, not the court, to determine procedural issues such as timeliness. Judgment will be entered for the defendant.