BOARD OF EDUCATION OF THE TOWNSHIP OF OCEAN, THE COUNTY OF MONMOUTH, PLAINTIFF-APPELLANT, v. TOWNSHIP OF OCEAN TEACHERS' ASSOCIATION AND AMERICAN ARBITRATION ASSOCIATION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 16, 1978—Decided February 2, 1979.

Before Judges ALLCORN, SEIDMAN and BOTTER.

*Mr. Peter Shebell, Jr.,* argued the cause for appellant (*Messrs. Shebell & Schibell,* attorneys).

*Mr. Thomas W. Cavanagh, Jr.,* argued the cause for respondent Township of Ocean Teachers' Association (*Messrs. Chamlin, Schottland, Rosen & Cavanagh,* attorneys).

Respondent American Arbitration Association did not file a brief.

The opinion of the court was delivered by

SEIDMAN, J. A. D. The issue presented by this appeal is the arbitrability of a teachers' grievance relating to the administrative assignment of truant students to remedial classes conducted by the teachers. In an action instituted by plaintiff board of education to enjoin arbitration, to which defendant teachers' association interposed a counterclaim to compel the board to arbitrate the grievance, the trial judge granted the association's motion for summary judgment and directed the board to submit the dispute to arbitration "in accordance with the collective bargaining agreement between the parties." This appeal followed.

At the core of the controversy is paragraph D, Article XV, of the agreement, which provides that

* * * [t]eachers shall be required to be available for remedial instruction for at least one period of forty-five minutes per week. All such teachers shall be required to inform the students under their direction of the time that these classes shall be scheduled.

In the fall of 1977 the principal of the junior high school began to assign truant students to their teachers' remedial classes. The association, as the sole and exclusive representative of the teachers for purposes of collective negotiations, filed a grievance with the school principal, complaining that ever since 1971, when the provision for remedial classes was first included in an agreement, the assignment of students to such classes had been the prerogative of the teachers, who also had the right to exclude recalcitrant or hostile students, and that the administrative assignments violated the "master contract," past practices, prior negotiations and *N. J. S. A.* 34:13A–5.3.

After adverse determinations at each step of the grievance procedure up to and including that of the board, subject only to the board's assurance that the remedial sessions would not be used for punitive purposes, the association filed a demand for arbitration, which led to this lawsuit and ultimately this appeal. The board argues, as it did below, that (1) the question of arbitrability is for the court; (2) the

grievance in question is not arbitrable under the pertinent clause of the contract; (3) the grievance is not arbitrable under *N. J. S. A.* 34:13–5.3, and (4) the assignment of students to the remedial classes is a matter of educational policy within the sole discretion of the board and is, therefore, not arbitrable. In response, the association contends that (1) the trial judge correctly made the "fundamental threshold decision" that the matter should be arbitrated; (2) the matter is arbitrable under the contract, and (3) the basis of the dispute was a properly negotiable term and condition of employment.

The trial judge acknowledged that the parties could be compelled to arbitrate only those matters which were within the scope of the agreement. He also indicated his awareness that it was the court's function to determine whether a particular dispute was arbitrable. He conceived his role in a dispute such as the one before him to be two-fold. As he stated in his oral opinion, it was, initially, to determine whether the subject involved a negotiable term or condition of employment or was a matter of major educational policy within the board's managerial prerogative.[1] If the dispute was found to be over a term and condition of employment, then the remaining issue to be resolved would be whether

---

[1] Since this case was heard and decided the Supreme Court has ruled that although a party who resists an attempt to have a dispute arbitrated may go to the Superior Court for a ruling on the issue of its contractual obligation to arbitrate, the issue of contractual arbitrability may not be reached if the threshold issue of whether the subject matter of the grievance is within the scope of collective negotiations is contested. In such event, a ruling on that issue must first be obtained from the Public Employment Relations Committee (PERC). *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N. J.* 144, 155 (1978). *In State v. State Supervisory Employees Ass'n*, 78 *N. J.* 54, 83 (1978), the Supreme Court emphasized that PERC has primary jurisdiction over the initial determination of whether a matter in dispute is within the scope of collective negotiations. No court of this State is empowered to make this initial determination. *Id.*

the matter was within the scope of the arbitration clause in the agreement.

The rationale of the trial judge's determination that the grievance was arbitrable flowed from his preliminary statement, with which we are in complete agreement, that the contractual creation of an after-hours period of remedial instruction involved the teachers' work load and the length of their work day, and was therefore a proper matter for negotiation. He also found that the controversy, which concerned the assignment of truant students to the remedial classes, an action opposed by the association as violating the intention of the parties and being contrary to past practice, fell squarely within the contractual definition of grievance. But the trial judge then stated that he could find no "rational nexus" between the "beneficial purpose to be received from remedial education and just forcing truants to attend make-up classes"; that truants were being sent to remedial classes "while those who have not violated school law and who are clearly probably in need of remedial treatment are not going to remedial classes by direction of the school." He rejected the contention that the controversy did not relate to the terms of the agreement and found that it did. He concluded that "[t]he subject matter, therefore, is arbitrable."

We mention first that which is obvious: The wisdom or propriety of the administrative decision to assign truant students to remedial classes was not the concern of the trial judge. Furthermore, while the association questioned the action taken through its use of the grievance mechanism, it does not follow therefrom that the dispute necessarily related to the terms of the agreement or, even if it did, that it was arbitrable.

N. J. S. A. 34:13A–5.3 mandates the negotiation by public employers of written policies setting forth grievance procedures and the inclusion of such procedures in the negotiated agreement. But this is limited to matters affecting the terms and conditions of employment. *West Windsor Tp. v. Public Employment Rel. Comm'n,* 78 *N. J.* 98, 108–109

(1978).[2] The contract between the parties in this case contains a mechanism for the presentation of grievances.[3] Four steps are provided, commencing with a discussion of the problem with the teacher's immediate supervisor and rising to a consideration of the matter by the board of education.

But "mandatory grievability does not necessarily equal mandatory arbitrability." *West Windsor Tp. v. Public Employment Rel. Comm'n, supra* at 107. While *N. J. S. A.* 34:13A–5.3 states that grievance procedures *may* provide for binding arbitration as a means for resolving disputes, the decision whether to utilize binding arbitration "is a procedural detail left to the parties to adopt or reject as the terminal step of the contractual grievance mechanism." 78 *N. J.* at 107. The parties are free to agree to arbitrate all, some or none of the grievable matters. *Id.*

██ The law is well established that the duty to arbitrate arises from the contractual agreement, and the parties can be compelled to arbitrate only those matters which are within the scope of the arbitration clause in the contract. *Moreira Constr. Co., Inc. v. Wayne Tp.*, 98 *N. J. Super.* 570,

---

[2] It should be noted that while a grievance may not be resolved in a manner contrary to statute or regulation, this "does not mean that the grievability of disputes concerning their alleged violation in a particular case is similarly precluded." *West Windsor Tp. v. Public Employment Rel. Comm'n, supra*, 78 *N. J.* at 116. To this extent, the scope of grievability is more expansive than the scope of negotiability. *Id.* Additionally, grievability is not restricted to such disputes affecting terms and conditions of employment as are contained in the agreement. It also encompasses all disputes involving "the interpretation, application, or violation" of those "policies, agreements or administrative decisions" which affect the terms and conditions of employment. *Id; see also Stone Harbor v. Wildwood Local 59, Policemen's Benevolent Ass'n of N. J.*, 164 *N. J. Super.* 375 (App. Div. 1978).

[3] Whether the matter in controversy here was mandatorily grievable is not the issue on this appeal. On this subject, see generally, *West Windsor Tp. v. Public Employment Rel. Comm'n, supra*.

575 (App. Div. 1968), certif. den. 51 *N. J.* 467 (1968). Furthermore, as the trial judge indicated, it is the duty of the judiciary to construe the contract in order to resolve any disagreement as to whether a particular dispute is arbitrable. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 *N. J.* 144, 153, 155 (1978).

■ It should be evident, therefore, that the right to grieve a dispute does not *per se* include the right to have that dispute submitted to arbitration. Arbitrability depends upon the relevant contractual provision, if any. In this case the arbitration clause of the contract is less extensive in scope than that relating to grievability. In the event the association is not satisfied with the result achieved after exhausting the steps of the grievance procedure, provision is made for the submission of the grievance to arbitration *if it arose from any portion of the contract or its interpretation.* The limited nature of the clause is emphasized by the added sentence: "This means only those grievances relating to the terms of this agreement shall go to binding arbitration."[4] Thus, we must initially place the particular issue in dispute alongside the contractual provision on which the association relies in order to determine whether the matter is covered by that provision.

■ The teachers' specific complaint relates entirely to the administrative assignment of certain students to remedial classes. Their argument below, as presented to the trial judge by the association's counsel, was that the determination of who was to attend the classes was to be made exclusively by the teachers "historically, traditionally, and it was negotiated that way, and agreed to." They maintained that the school administration played no role in that respect. However, the

---

[4]The arbitration clause makes the decision of the arbitrator binding upon the board and the association. There is no provision for *advisory* arbitration of any matter. See *West Windsor Tp. v. Public Employment Rel. Comm'n, supra,* 78 *N. J.* at 108.

pertinent paragraph in the contract only requires teachers to be available for remedial instruction for at least one period of 45 minutes per week and to notify the students under their direction of the scheduled time. Nothing contained therein either grants to the teachers the exclusive authority over student assignment to the classes, or denies to the school administration the power to make student assignments to those classes.

The association asserts, apparently without contradiction, that ever since 1971, when the provision for remedial classes was first included in the contract, the decision as to who would attend them was left entirely to the discretion of the teachers. That may have been a sufficient basis for filing the grievance, but it cannot alter or add to the clear and unambiguous language of the contract. We see nothing in the contract requiring interpretation. We are convinced that the matter in dispute was not encompassed within and did not constitute a violation of Article XV, paragraph D, of the contract and, therefore, was not arbitrable under the arbitration clause of the contract.

We consider the subject matter to be nonarbitrable for the additional reason that the matter of student assignment to remedial classes is clearly within the inherent management prerogative of the board to ensure that all students are provided with a thorough and efficient education. See *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra*, 78 *N. J.* at 156. As such, it was not a matter on which the parties could legally negotiate, and that which is not legally negotiable in the first place cannot be arbitrable. *Id.* at 156, 160.

We think it is worth noting, in passing, that no one in the administration has sought in any way to take from the teachers their previous practice of determining which nontruant students require remedial help and directing them to attend the classes established for that purpose.

The judgment directing the board to proceed to arbitration and dismissing plaintiff's complaint seeking to restrain arbitration is reversed. Arbitration is permanently enjoined.[5]

---

[5]We have been informed that this matter went to arbitration, a stay thereof pending appeal having been denied, and that the arbitrator ruled the board did not have the right unilaterally to assign students to remedial instruction and directed the parties to return to the previous procedure. The association states that the board accepted the decision, thereby mooting this appeal. The board denies accepting the findings of the arbitrator. It states that it has taken appropriate legal steps to have the award set aside. We do not consider the matter moot, and would expect any proceedings with regard to the arbitration award to be governed by our decision herein.