198 N.J. Super. 520 (1984)
487 A.2d 1260
JAMES STIGLIANO, PLAINTIFF-APPELLANT,
v.
ST. ROSE HIGH SCHOOL, REVEREND ALFRED D. SMITH AND SISTER JOAN IMMACULATE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1984.
Decided December 17, 1984.
*522 Before Judges MICHELS, PETRELLA and BAIME.
John R. Ford argued the cause for appellant (Auerbach, Rudnich, Waldman, Ford & Addonizio, attorneys; John R. Ford, on the brief).
James Clark argued the cause for respondent (Yauch, Peterpaul and Clark, attorneys; James Clark, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents difficult questions pertaining to the scope of judicial review of decisions emanating out of grievance procedures set forth in an employment contract. Plaintiff, a non-tenured teacher, instituted this action in the Superior Court, Chancery Division, seeking to enjoin defendants, a private high school, its director and principal, from *523 terminating his employment. Other counts of the complaint sought compensatory and punitive damages based upon allegations that defendants maliciously interfered with plaintiff's prospective economic advantage. The principal thrust of plaintiff's claim was that defendants improperly attempted to discharge him from his teaching position contrary to the terms of a written agreement. In response, defendants contended that the decision not to renew plaintiff's contract was proper and was made in accordance with grievance procedures mandated in the employment agreement. Defendants further asserted that resolution of questions pursuant to the two-step grievance process was intended to be final and binding upon the parties, thereby precluding judicial intervention. Cross motions for summary judgment were submitted limited to plaintiff's demand for injunctive relief. After extensive argument, the trial judge entered summary judgment in defendants' favor. This appeal followed.[1]
The facts necessary for resolution of the issue presented here are not in dispute. Plaintiff was employed as a teacher at St. Rose High School for the 1980-81 terms. Apparently he performed his duties in a satisfactory manner and his contract was renewed the following year. By letter dated March 11, 1983, the principal, Sister Joan Immaculate, informed plaintiff that the school "did not intend to offer [him] a contract" for the *524 1983-84 term. No reason was presented supporting defendants' decision. Pursuant to the terms of the employment contract, plaintiff filed a grievance with the school's faculty council. Following its review of plaintiff's arguments, the council denied the grievance. In accordance with the grievance procedure, plaintiff appealed the council's decision to the director. After hearing arguments, the director sustained the action of the council.
Plaintiff then filed a verified complaint and order to show cause contending that his "dismissal" violated the pertinent provisions of the employment agreement. As noted, plaintiff argued that he had been improperly discharged and sought an order compelling defendants to renew his contract. Among the defenses set forth in defendants' answer, it was alleged that plaintiff had made a vague threat implying that he would be less than cooperative if he were granted tenure. It is to be noted that had plaintiff's contract been renewed for a third consecutive year, tenure would have been awarded automatically. Defendants further contended that plaintiff's grievance was properly denied and that the director's decision in that regard was binding.
Following preliminary arguments, the Chancery Division ordered defendants to provide a statement of reasons supporting their decision not to renew plaintiff's contract. The court further directed that the issue again be submitted to the faculty council and, if necessary, to the director pursuant to the grievance procedures set forth in the employment agreement. In compliance with the court's order, Sister Immaculate supplied a written statement which referred to remarks attributed to plaintiff allegedly disclosing his intention not to cooperate with school authorities once granted tenure. Also pursuant to the court's order, the matter was processed through the grievance procedure a second time. We note in that regard that both plaintiff and the school were represented by counsel who were present at all grievance proceedings, but who did not directly participate. At the first step, the five member faculty council *525 heard the arguments advanced by plaintiff and Sister Immaculate's responses. The council again denied plaintiff's grievance noting that the school's decision not to renew his contract was in accordance with the employment agreement. The grievance was resubmitted to the director who upheld the council's decision. Specifically, the director concluded that plaintiff was a non-tenured teacher and that the school was not duty-bound to renew his teaching contract. Although the record is not entirely clear, the director apparently concluded that the notification period set forth in the contract applied only to the dismissal of teachers and not to decisions pertaining to the non-renewal of their contracts.
Both plaintiff's and defendants' arguments at the trial level and on appeal are premised upon their respective interpretations of the employment agreement. Unfortunately, the eight page contract was prepared by the school's teachers' association without the assistance of an attorney and is inartfully drafted. The dispute here centers about the contractual provisions governing tenure. They provide in pertinent part as follows:
SECTION 1. Tenure will be granted after satisfactory completion of three consecutive years and one (1) day. At that time a letter of tenure will be issued to the teacher.
SECTION 2. Teachers not having tenure are not entitled to have their annual contracts renewed.
SECTION 3. Non-tenured teachers may be dismissed due to:
A. Staff cut backs
B. Inadequate functioning according to the philosophy, policies, and practices of both the Diocesan Office of Education and Saint Rose High School. This decision must be supported with written evaluation by both the administration and department chairperson.
SECTION 4. Any teacher who is not being offered a contract for the next school year must be notified of same, in writing, with the exact cause for dismissal stated, no later than March 1 of the current year.
SECTION 5. Should the need for dismissal arise after March 1, the teacher must be notified immediately in writing of the decision.
In granting defendants' motion for summary judgment, the trial court adopted the reasoning of the faculty council and the director and drew a distinction between the dismissal of a *526 teacher and a decision not to renew his employment contract. According to the trial judge, a decision to discharge under Section 3 of the contract must be predicated upon either a finding of "inadequate functioning" or a desire to reduce staff. The notification provision set forth in Section 4, requiring that a teacher be advised of his discharge and its underlying cause prior to March 1, was said to pertain solely to dismissals. The court concluded that Section 2, which provides that non-tenured teachers have no right to renewal of their contracts, was dispositive of the issue presented. Specifically, the trial judge concluded that the agreement conferred absolute discretion on the school authorities not to renew the contract of a non-tenured teacher. In that regard, the court noted that this right was unfettered by any notification requirement set forth in the agreement. Rather, the trial judge referred to the "diocesan handbook" which had been cited by defense counsel during oral argument. Apparently, the handbook alluded to the provisions of N.J.S.A. 18A:27-10 which require a school district to advise a non-tenured teacher of its decision not to renew his contract before April 30. In sum, the trial court concluded that defendants' decision not to renew plaintiff's contract was consistent with the terms of the employment agreement.

I
We first address the threshold question pertaining to the parameters of judicial review of grievance settlements made pursuant to an employment agreement.[2] The issue presented is *527 of first impression in New Jersey. We are not totally without guidance, however. The question has been addressed by the United States Supreme Court. In General Drivers, Warehousemen & Helpers v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), a union and several of its members instituted suit under the Labor Management Relation Act (29 U.S.C. § 185) claiming wrongful discharge. In its complaint, the union alleged that the employer had refused to comply with a ruling of the Joint Area Cartage Committee directing that the employees be reinstated with full seniority and back pay. The committee's decision was asserted to have been rendered in accordance with grievance procedures established in the collective bargaining agreement between the union and the employer. The district court dismissed the complaint for want of federal jurisdiction. The Court of Appeals affirmed and held that the determination of the committee was not an arbitration award and was, thus, unenforceable. The Supreme Court reversed. In a unanimous decision, the Court rejected the argument that only arbitration awards, and not grievance settlements, were binding upon the parties and judicially enforceable. Specifically, the Court stated:
It is not enough that the word `arbitration' does not appear in the collective bargaining agreement, for we have held that the policy of the Labor Act can be effectuated only if the means chosen by the parties for settlement of their differences ... is given full play. Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301. And if the Joint Area Cartage Committee's award is thus enforceable, it is of course not open to the courts to reweigh the merits of the grievance. [citations deleted] 372 U.S. at 519, 83 S.Ct. at 791, 9 L.Ed.2d at 920.
See also Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), reh. den. 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964).
*528 In an unbroken line of cases, the lower federal courts have held that grievance settlements are entitled to the same degree of judicial deference customarily accorded arbitration awards. The most cited opinion on the subject is United Mine Workers, Etc. v. Barnes & Tucker Co., 561 F.2d 1093 (3rd Cir.1977). There, the collective bargaining agreement provided that grievances were to be submitted to a joint committee and that its decisions were to be considered final and binding even if reached prior to arbitration. Noting the federal policy favoring final adjustment of disputes by whatever method chosen by the parties, the court stated:
It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award ... We therefore believe that the settlement agreements at issue are as enforceable as arbitration awards. Id. at 1096-1097.
Of similar import is Amalgamated Meat Cutters Local 195 v. M. Feder & Co., 234 F. Supp. 564 (E.D.Pa. 1964). There, it was stated:
The important policy considerations which favor the early settlement of labor disputes without outside interference would be frustrated if settlement agreements reached in the grievance process were refused enforcement unless incorporated in a formal arbitrator's award. For if a final and binding settlement ... were not enforceable in the federal courts the incentive would be gone for early settlement after the grievance procedure has been set in motion. Id. at 567.
See also American Freight Systems, Inc. v. NLRB, 722 F.2d 828, 830 n. 4 (D.C. Cir.1983); McNaughton v. Dillingham Corp., 707 F.2d 1042, 1046 (9th Cir.1983); Early v. Eastern Transfer, 699 F.2d 552, 559 (1st Cir.1983); Teamsters Local Un. v. Helms Exp. Inc., 591 F.2d 211, 216 (3rd Cir.1979); I & F Corp. v. Intern. Ass'n of Heat & Frost, 493 F. Supp. 147, 149 (S.D.Ohio 1980); Milos v. Spector Freight Syst., 464 F. Supp. 754, 756 (M.D.N.C. 1979).
We believe that these public policy considerations strongly militate in favor of according substantial deference to *529 decisions made pursuant to grievance procedures contained in an employment agreement. Alternatives to conventional court-room dispute resolution have recently received enthusiastic support from a broad array of proponents. They range from Chief Justice Warren Burger[3] to consumer advocate Ralph Nader.[4] Scholarly journals have also endorsed such efforts.[5] In New Jersey, our courts have long favored the settlement of disputes by arbitration. See, e.g., Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J. Super. 397, 402 (App.Div. 1979); J. Baranello & Sons, Inc. v. City of Paterson, 168 N.J. Super. 502, 506-507 (App.Div. 1979); Hudik-Ross Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 166 (App.Div. 1974). See also Polshek v. Bergen Cty. Iron Works, 142 N.J. Super. 516, 522 (Ch.Div. 1976). So too, appraisal awards have received judicial approval. See Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 14 (1978); Titus v. West American Ins. Co., 143 N.J. Super. 195, 205 (Law Div. 1976). These innovative mechanisms tend to alleviate the pressure of ever-increasing judicial caseloads and provide a flexible, inexpensive and easily assessable means for the resolution of conflicts without resort to the courts. Thus, "every reasonable intendment and presumption comes to the support of such *530 awards." Ibid. We recognize that there are substantial differences between arbitration and grievance procedures. Cf. Tp. of W. Windsor v. Pub. Emp. Rel. Comm., 78 N.J. 98, 107 (1978); Bd. of Ed. Ocean Tp. v. Tp. Ocean Teachers' Ass'n., 165 N.J. Super. 427, 434 (App.Div. 1979). Nonetheless, where the parties themselves agree that a procedure other than arbitration is to provide a conclusive resolution of their differences, we perceive nothing unfair in approving or supporting their choice.
We hold that the scope of judicial review of a grievance committee's decision is limited to determining whether or not the interpretation of the contractual language is reasonably debatable. See State v. State Troopers Frat. Ass'n., 91 N.J. 464, 469 (1982); Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979); Ukrainian Nat. Urban Renewal v. Muscarelle, Inc., 151 N.J. Super. 386, 398 (App.Div. 1977), certif. den. 75 N.J. 529 (1977). Of course, the grievance committee or officer may not disregard the contractual terms and is not free to rewrite them. In re Matter of Arbitration Between Grover, 80 N.J. 221, 230 (1979). The decision must "draw its essence from the bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1429 (1960). See also Belardinelli v. Werner Continental, Inc., 128 N.J. Super. 1, 7 (App.Div. 1974). Nevertheless, the court should not "overrule [a decision] simply because [it] believes its own interpretation of the contract would be the better one." W.R. Grace & Co. v. Local 759, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298, 306 (1983). See also United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599, 80 S.Ct. at 1358, 4 L.Ed.2d at 1424. It bears repeating that it is the grievance committee's construction of the contract for which the parties bargained, and not that of a reviewing court.

II
Applying these standards, we are entirely satisfied that the construction of the contract adopted by the faculty *531 council and the director was fair and reasonable. The contract was prepared by the teachers' association of which plaintiff is a member. Ambiguities should be strictly construed against him. In re Miller, 90 N.J. 210, 221 (1970); Terminal Construction Corp. v. Bergen Cty. River Sanitary Sewer Auth., 18 N.J. 294, 302 (1955). The only evidence presented with respect to the intent of the parties was an affidavit of the director. He indicated that the drafters intended to confer unfettered discretion upon the school in determining whether or not to renew the contract of a non-tenured teacher. Under these circumstances, we discern no justifiable basis to disturb the findings and conclusions of the faculty council and the director.[6]
Accordingly, the order granting defendants' motion for summary judgment as to the first count is hereby affirmed.
NOTES
[1] We are constrained to note that the order from which the appeal was taken was not a final judgment. To be appealable without leave granted, the judgment must be final as to all parties and all issues. See Hudson v. Hudson, 36 N.J. 549, 552-553 (1962); Nicholas v. Sugar Lo Co., 192 N.J. Super. 444, 450 (App.Div. 1983) certif. den. 96 N.J. 284 (1984). The summary judgment order clearly did not satisfy this test for it left unadjudicated the merits of the damage claims. The order was interlocutory and was not appealable as a matter of right. See R. 2:2-3(a)(2). Application should have been made to this court for leave to appeal. See R. 2:5-6(a). At this posture of the proceedings, however, we will grant the necessary leave to appeal nunc pro tunc in the interest of the prompt disposition of the issue presented which must be resolved before the suit can proceed further. See Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App.Div. 1974). See also Ibberson v. Clark, 182 N.J. Super. 300, 302-303 (App.Div. 1982).
[2] The pertinent contractual provisions read as follows:

Section 1. All grievance procedures will be administered through the faculty council.
Section 2. Any grievance arising during the terms of this contract must be presented in writing within three (3) school days to the party/parties involved, and to the faculty council.
Section 3. Within five (5) school days after presentation of the written grievance, the grievance shall be discussed between the parties involved, and the faculty council.
Section 4. Should the decision of the faculty council not appease the parties involved, an appeal may be presented to the Director for a final decision.
[3] See address by Chief Justice Burger at the ABA Conference on the Resolution of Minor Disputes (May 27, 1977), quoted in Wall St.J., Oct. 27, 1978, at 48.
[4] See Nader, "Consumerism and Legal Services: The Merging of Movements," 11 Law & Soc'y Rev. 247-255 (1976).
[5] See Cahn, "What Price Justice: The Civilian Perspective Revisited," 41 Notre Dame Law 927 (1966); Danzig, "Toward the Creation of a Complementary, Decentralized System of Criminal Justice," 26 Stan.L.Rev. 1 (1973); Galenter, "Delivering Legality: Some Proposals for the Direction of Research," 11 Law & Soc'y Rev. 225 (1976); Murray, "Third-Party Intervention: Successful Entry for the Uninvited," 48 Alb.L.Rev. 573 (1984). See also Introduction, "Dispute Resolution," 88 Yale L.J. 905 (1979). Alternative dispute resolution is not a new concept. A discussion of the history of experiments pertaining to extra-judicial dispute resolution mechanisms is set forth in Auerbach, Justice Without Law? Resolving Disputes Without Lawyers 28 (1983).
[6] In light of our decision, we have no occasion to decide whether the trial court's reference to the diocesan handbook was proper. See Wm. J. Burns, etc., Inc. v. N.J. Guards Union, Inc., 64 N.J. Super. 301, 305 (App.Div. 1960), certif. den. 34 N.J. 464 (1961).