**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3443-23
      A-3506-23

SHERRI ADLER, DENEEN
AMRANI, DONNA ANDERSON,
ZEYNEP ARHAN, JANET
ARNEST, MONICA AROCHO,
PATRICIA BARBERIO, COLEEN
BERMAN, JANET BODNAR,
AMAL BOSTROS, GINA CAFARO,
MARCI CARESTIA, RITU CHAWLA,
PRABHA CHIDAMBARAN, JOANNA
COMO, BERNADETTE COURTER,[1]
ALISHA COX, ANNE CUGINI,
VICKIE DEBARI, DEEANN DERUVO,
PHYLLIS DOWNER, ROSEMARY
EDMONSON, ELLEN ELY, SALLY
FARG, CAROLINE FERNANDEZ,
ANTHONY FISCHER, KAREN
FITZGERALD, MARGARET
GALLAGHER, DONNA GEESEY,
DALIA GHALY, GINA GIARDINA,
LEA GIRGENTI, SHILPI GOSWAMI,
MATTHEW GRACON, TRICIA HALL,
ELAINE HANEY, KATHLEEN
JENNINGS, MI JUNG, KATREEN
KHELLA, ANITA KO, DONA
LAROCCA, ELLEN LAVANCO,
PATRICIA LOVELAND, AMBER

---

[1]  Improperly plead as Beernadette Courter.

LUBERTO, MIRIAM LUGO-RODRIGUEZ, KOMAL MALHOTRA, DONALD MANDY, KLODIANA MARFIA, MARIE MAROULIS, MICHELLE MARRONE, JEAN MARTIN, JEFFREY MCCAWLEY, HANY MEKHAIL, KATHLEEN MILLER, HODA MOHAMED, LORELEI MORIN, WENDY MOY, PINKY NAINWANI, HANNAN NASHED, RENEE NESSIEM-BASSILI, PATRICIA O'LEARY JONES, PATRICIA OCKENHOUSE, JENNIFER ORANCHAK, KIMBERLY PACE, DONNA PALAGONIA, VIVIAN PERCOCO, EMMA PEREZ, LISA RAHNER, MYRNA RAZAK, FARHAT REHMANI, KELLIANNE RIZK, CHRISTINE ROMAN,[2] JANETE ROSEMAN, ADRIENNE SABATINO, MELIKE SAHIN, MARIA SAMULKA, CHRISTINA SCHMITT, MARLA SCHNEIDER, KELSEY SCHUSTER, RAINA SFEIR, MAGDA SHEHATA, SAMINA SHEIKH, MICHELE SHERMAN, JAEKYOUNG SHIM, RENEE SIMON-RADOCZY, MOONIA SOHERWARDY, LAURA SOUTHON, NANCY STETZ, VIVIAN TADROS, CHRISTINE TAMBINI MCCANN, MUI LING TANG, JAYNE TOKASH, ESTELA VALDEZ, JOSLYN VELEZ, MELISSA WHYTE, JODY WIENER, MARIA WOOD, LORRAINE ZEMBRO, and PATRICIA ZIMMERMAN,

---

[2] Improperly pled as Christinee Roman.

A-3443-23

Plaintiffs-Respondents/Cross-
Appellants,

v.

EAST BRUNSWICK BOARD OF
EDUCATION,

Defendant-Appellant/Cross-
Respondent.

_____

Argued June 3, 2025 – Decided July 15, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-4816-21.

Jessica V. Henry argued the cause for appellant/cross-
respondent (Cleary Giacobbe Alfieri Jacobs, LLC,
attorneys; Matthew J. Giacobbe, of counsel and on the
briefs; Jessica V. Henry, on the briefs).

Sheila Murugan argued the cause for
respondents/cross-appellants (Zazzali, PC, attorneys;
Richard A. Friedman, of counsel and on the briefs;
Sheila Murugan, on the briefs).

PER CURIAM

These appeals involve disputes over whether plaintiffs, who are part-time

public-school employees, are entitled to lost interest or investment income

because their employer, the East Brunswick Board of Education (the Board),

belatedly enrolled them in the New Jersey Defined Contribution Retirement

Program (the DCR Program). Plaintiffs appeal from a Law Division order denying their motion to reinstate their complaint after plaintiffs' administrative application for damages was denied in a final agency decision by the Board of Trustees of the DCR Program (the Trustees). The Board appeals from an order denying its motion to dismiss plaintiffs' complaint with prejudice.

Because plaintiffs' sole remedy for claims related to the DCR Program was an administrative claim to the Trustees, and because plaintiffs did not appeal from the Trustees' final agency decision, we affirm the part of the order that denied plaintiffs' motion to reinstate their complaint in the Law Division. We reverse the order denying the Board's motion to dismiss with prejudice because plaintiffs have no remedy other than an administrative remedy and they did not, and now cannot, appeal from the Trustees' decision. Consequently, plaintiffs have no further possible legal claim for their alleged damages against the Board. We, therefore, remand with direction that the Law Division enter an order dismissing plaintiffs' complaint with prejudice.

I.

The DCR Program was established in 2007 for the benefit of public employees who are not eligible for other state-administered pension funds or retirement systems, or whose salary falls within certain minimum or maximum

4

criteria. N.J.S.A. 43:15C-1 and -2. Enrollment in the DCR Program is mandatory for eligible employees, however, eligible employees may elect to waive their right to participate. N.J.S.A. 43:15C-2(a), (c). An employee contributes five-and-a-half percent of his or her base salary and the employer contributes three percent of the employee's base salary. N.J.S.A. 43:15C-3(a), (b).[3] The funds are then invested. N.J.S.A. 43:15C-5. Employees have the right to allocate their contributions, as well as the employer's contributions on their behalf, into investment alternatives, like mutual funds, provided that the investment alternatives are approved by the Trustees. Ibid. When they retire or otherwise terminate their employment, eligible employees or their beneficiaries will receive their share of the funds based on their contributions, the employer's contributions on their behalf, and earnings on those monies. Ibid.

Plaintiffs are past and present part-time employees of the Board. They were entitled to be enrolled in the DCR Program. The Board, however, mistakenly delayed enrolling plaintiffs.

---

[3] The employee's contributions are made by the employer withholding five-and-a-half percent of the employee's base salary and contributing that withheld amount to the DCR Program. N.J.S.A. 43:15C-3(a).

A-3443-23

After the Board realized its mistake, it enrolled the plaintiffs who were still working for the Board. In September 2020, the Board and affected plaintiffs began making catch-up contributions to account for the contributions that should have been made had plaintiffs been timely enrolled. The Board points out, and plaintiffs do not dispute, that until plaintiffs were enrolled, they received the five-and-a-half percent of their salary that should have been withheld and paid to the DCR Program.[4]

On August 13, 2021, plaintiffs filed a two-count complaint against the Board in the Law Division. In count one, plaintiffs alleged that the Board had breached an "implied and/or express" contract by not timely enrolling them in the DCR Program. In count two, plaintiffs alleged that they suffered damages "[b]y [o]peration of [l]aw." Under both counts, plaintiffs sought the same relief: lost interest or investment income for plaintiffs still employed with the Board; and unmade contributions, plus lost interest or investment income, for plaintiffs who became members of other pension funds, resigned, or retired.

---

[4]  At some point in time, the East Brunswick Education Association filed a grievance on behalf of plaintiffs under the governing collective bargaining agreement (CBA). That grievance was denied. The record on these appeals does not contain the grievance or the resulting denial. The parties, however, do not dispute that a grievance was filed and denied. It is also undisputed that the parties did not proceed to grievance arbitration as called for in the CBA.

A-3443-23

The Board moved to dismiss the complaint, arguing that the Law Division lacked subject matter jurisdiction because plaintiffs needed to pursue their grievance under the CBA or an administrative remedy before the Division of Pension and Benefits (the Division). The Board also argued that plaintiffs had failed to plead a breach of contract under the CBA and that claims made by certain plaintiffs were time-barred under the governing statute of limitations.

On January 31, 2022, the Law Division entered an order denying the Board's motion. On reconsideration, however, the court vacated its January 31, 2022 order and, in an order dated October 25, 2022, it dismissed the complaint without prejudice. The court dismissed count two so that plaintiffs could pursue an administrative remedy before the Division. The court dismissed count one without prejudice pending the administrative proceedings. Additionally, the court stated, "the statute of limitations as alleged in [plaintiffs'] complaint is hereby preserved."

In December 2022, plaintiffs filed a claim with the Division seeking damages for alleged lost interest and investment income due to their delayed enrollment in the DCR Program. Plaintiffs also sought unmade contributions for the plaintiffs who had joined other pension funds, resigned, or retired. On May 22, 2023, the Division denied plaintiffs' request for damages, explaining

7

that the governing statutes did not provide for the recovery of lost interest or investment income. The Division also stated "[t]here are no [statutory] provisions for the employer to make or collect contributions for an employee that is no longer on their payroll."

Plaintiffs administratively appealed from the Division's determination to the Trustees. On February 23, 2024, the Trustees issued a final agency decision, affirming the Division's decision and denying plaintiffs' request for damages. The Trustees ruled that "[t]here are no specific statutory provisions that deal with lost interest or investment income due to delayed or delinquent enrollment." The Trustees pointed out that the DCR Program's "regulations discuss contributions in N.J.A.C. 17:6-5.2 [and] 5.3. These regulations provide instructions on the calculation of catch-up contributions, but consistent with the statutory authority there is no provision for damages due to unearned interest or investment income due to delayed enrollment." Furthermore, the Trustees explained that they have

> the authority to determine eligibility for participation in the DCR [Program] and administer the required employer and employee contributions. N.J.S.A. 43:15C-2; N.J.S.A. 43:15C-3. There are no specific statutory provisions that deal with lost interest or investment income due to delayed or delinquent enrollment. No specific rate or amount of interest or investment income is specified. Instead, "participants

8

in the [DCR] Program shall be allowed to allocate their own contributions and the contributions of their employer into investment alternatives as determined by the [Trustees] . . ." N.J.S.A. 43:15C-5. What interest or investment income these employees would have earned had they been timely enrolled in the DCR [Program] is not within the scope of the [Trustees'] statutory authority to determine.

Plaintiffs did not file an appeal to this court from the final agency decision by the Trustees. Instead, in April 2024, plaintiffs moved to vacate the October 25, 2022 Law Division order and reinstate their complaint in the Law Division. The Board cross-moved to dismiss plaintiffs' complaint with prejudice.

On June 7, 2024, after hearing arguments, the Law Division entered two orders. In the first order, the trial court denied without prejudice plaintiffs' motion to vacate the October 25, 2022 order, reasoning that plaintiffs had failed to exhaust their administrative remedies by appealing the Trustees' final agency decision to the Appellate Division. In the second order, the trial court denied the Board's motion to dismiss the complaint with prejudice, reasoning that plaintiffs might be able to allege a different cause of action supporting their claims for damages.

The Board moved for leave to appeal the order denying their motion for dismissal with prejudice and we granted that motion. Plaintiffs filed a separate appeal from the order denying their motion to reinstate the complaint and also

moved for leave to appeal from that order. We granted plaintiffs leave to appeal and we consolidated the two appeals. We also directed the parties to address whether the Law Division ever had jurisdiction over plaintiffs' claims, the statute of limitations defense, and whether the October 25, 2022 and June 7, 2024 orders were final orders subject to appeal by right.

In addition, we directed plaintiffs to explain "what further action, if any, they intend[ed] to take to pursue their claims, the specific times when they [would] pursue their claims, and in what forum they believe[d] they [could] pursue their claims." Plaintiffs responded to those questions by stating that courts have the jurisdiction to award them damages, and that they were entitled to pursue "all judicial remedies, including damages" before the trial court.

On July 17, 2024, the Law Division submitted a written supplement to the oral decision it had placed on the record on June 6, 2024. The trial court reiterated that plaintiffs were required to appeal to the Appellate Division to exhaust their administrative remedies. The trial court also reasoned that the action in the Law Division was barred because the governing statutes and regulations created an exclusive administrative claim procedure before the Division and Trustees. The Law Division went on to point out that the Appellate Division had exclusive jurisdiction to review the final administrative decision

by the Trustees. Nevertheless, the trial court explained that it did not dismiss plaintiffs' complaint with prejudice because it thought it was possible that plaintiffs had separate claims not governed by the Division's administrative claim procedure.

## II.

On its appeal, the Board makes five arguments. It contends that (1) the Law Division never had subject matter jurisdiction over count two; (2) the Law Division never had subject matter jurisdiction over count one because the statutes and regulations governing the DCR Program bar a breach of contract claim and the CBA requires arbitration of the dispute between the parties; (3) the October 25, 2022 order was not a final order subject to appeal; (4) the June 7, 2024 orders were not final orders that could be appealed as of right; and (5) the claims of some plaintiffs are time-barred by the applicable statute of limitations.

In their appeal, plaintiffs make six arguments. They contend that (1) the October 25, 2022 order and the June 7, 2024 orders are final orders subject to appeal as of right; (2) the Law Division had jurisdiction over their claims in count one seeking damages for a breach of contract; (3) the Law Division had subject matter jurisdiction over their claims in count two seeking damages "by

operation of law"; (4) they were not required to exhaust their administrative remedies, and, even if they were, they did exhaust their remedies by obtaining a final agency decision from the Trustees; (5) the Law Division erred by denying their motion to reinstate their complaint and they should be allowed to file an amended complaint; and (6) the Law Division correctly denied the Board's motion to dismiss the complaint with prejudice.

The controlling issue on this appeal is a question of law: whether plaintiffs can pursue a claim for damages against the Board in the Law Division for lost interest or investment income because of their delayed enrollment in the DCR Program. That legal question involves interpreting the statute that created the DCR Program. We review that legal question de novo. 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015).

We hold that plaintiffs' exclusive remedy for their alleged damages related to the DCR Program was an administrative remedy before the Division and Trustees. We further hold that because plaintiffs failed to appeal the Trustees' final agency decision to us, they are barred from pursuing any other claim seeking damages for their delayed enrollment in the DCR Program. Given those holdings, the parties' other arguments are moot.

12

A.    Our Jurisdiction of These Appeals.

Our jurisdiction over these appeals is not at issue. We granted both the Board and plaintiffs leave to appeal from the two June 7, 2024 orders. See R. 2:2-4. Accordingly, we need not decide whether those orders are final orders subject to appeal as of right under Rule 2:2-3.

Nevertheless, we point out that generally when an order dismisses a complaint without prejudice, and a plaintiff has the right to file an amended complaint, the order is not final. Johnson v. City of Hoboken, 476 N.J. Super. 361, 370 (App. Div. 2023) (explaining that "[a]n order entered without prejudice generally allows plaintiffs to move to amend their complaint and is therefore not a final order" (citing Kwiatkowski v. Gruber, 390 N.J. Super. 235, 237 (App. Div. 2007))); Grow Co. v. Chokshi, 403 N.J. Super. 443, 460 (App. Div. 2008) (clarifying that a "dismissal without prejudice of unadjudicated claims that have not been concluded in fact but are left to be resurrected in a new suit" does not constitute a final judgment).

We do, however, sometimes treat orders dismissing complaints without prejudice as final orders when we determine that there are no viable claims that could be asserted in an amended complaint. Johnson, 476 N.J. Super. at 370-71 (treating an order dismissing a complaint without prejudice as a final order

13                                                                    A-3443-23

where plaintiffs did not file a second amended complaint, and instead appealed, because the time to amend had expired).  We also have occasionally granted leave to appeal nunc pro tunc, when the finality of an order has not been addressed until we reached the merits of the appeal.  Jones v. Jones, 242 N.J. Super. 195, 319 n.2 (App. Div. 1990) (granting "the necessary leave to appeal [from an interlocutory order] nunc pro tunc in the interests of the prompt disposition of the issue presented"); Stigliano v. St. Rose High Sch., 198 N.J. Super. 520, 523 n.1 (App. Div. 1984) (allowing "the necessary leave to appeal [from an interlocutory order] nunc pro tunc in the interest of the prompt disposition of the issue presented which must be resolved before the suit can proceed further").

We also point out that the October 25, 2022 order was not a final order. That order was entered with the expectation that plaintiffs would file administrative proceedings before the Division and might seek to amend or reinstate their complaint after they had exhausted their administrative remedies.

B.    The Exclusive Administrative Remedy Regarding Claims Related to The DCR Program.

The DCR Program is a state-administered pension plan for certain government employees.  N.J.S.A. 43:15C-1 and -2.  The DCR Program was created for public employees who are not eligible for the Public Employees

Retirement System or whose salary falls within certain minimum or maximum criteria. Est. of Smith v. N.J. Div. of Tax'n, 29 N.J. Tax 408, 416 n.7 (Tax 2016). The governing statute sets forth the employee's and employer's contributions for each eligible employee. N.J.S.A. 43:15C-3. The Legislature authorized the Division to adopt rules and regulations necessary to implement the DCR Program. N.J.S.A. 43:15C-1. Under those regulations, when an employer fails to make a timely contribution for an employee, the employer is required to make "catch-up" contributions. N.J.A.C. 17:6-5.2 and -5.3.

Employees who have a claim related to the DCR Program must exhaust all administrative remedies under the program. N.J.A.C. 17:6-16.4(a); N.J.A.C. 17:6-2.1 (defining the "[p]rogram" as the DCR Program). In that regard, an aggrieved employee must file a claim with the director of the Division, otherwise known as the plan administrator. N.J.A.C. 17:6-20.9; N.J.A.C. 17:6-2.1 (defining the "[p]lan [a]dministrator" as the director of the Division). The DCR Program plan administrator "has full power and discretionary authority to construe and interpret the provisions of the [DCR] Program . . . and to adjudicate claims thereunder." N.J.A.C. 17:6-20.9.

The DCR Program does not give "any participant, beneficiary, alternate payee or any other person any legal or equitable right against the employer or

the [p]lan [a]dministrator or their representatives, except as is expressly provided by the [p]rogram." N.J.A.C. 17:6-16.12. In that regard, the DCR Program states:

> The obligation of the State to participating employees and contractors shall be contractual only and no preferred or special interest in the deferred moneys shall accrue to such employees or contractors, except that all assets and income of the program shall be held in trust for the exclusive benefit of participating employees and their beneficiaries.
>
> [N.J.S.A. 43:15C-5.]

Notably, the statutory language of the DCR Program does not expressly address employee claims against an employer for lost interest or investment income resulting from delayed enrollment, nor does it specify the procedure for seeking redress in such cases.

The law and court rules are also clear in directing that administrative remedies must be exhausted before a party can bring an action in court. Rule 4:69-5 states:

> Except where it is manifest that the interest of justice requires otherwise, actions under [Rule] 4:69 [Actions In Lieu Of Prerogative Writs] shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.

The exhaustion of remedy requirement is "designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." Brunetti v. Borough of New Milford, 68 N.J. 576, 588 (1975) (citing Ward v. Keenan, 3 N.J. 298, 302 (1949)). The New Jersey Supreme Court has explained:

> The doctrine of exhaustion of administrative remedies serves three major purposes: (1) the rule ensures that claims will be heard, at least as a preliminary matter, by a body possessing relevant expertise; (2) it allows the creation of a factual record necessary for meaningful appellate review; and (3) a favorable agency decision may obviate the need for judicial involvement.
>
> [Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 569 (1979) (Pashman, J., concurring) (citing Bd. of Educ. of Bernards Twp. v. Bernards Twp. Educ. Ass'n, 79 N.J. 311, 317 (1979)).]

The Appellate Division is vested with exclusive jurisdiction to review final administrative agency decisions. See R. 2:2-3 and R. 2:2-4; N.J. Election L. Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 568-69 (App. Div. 2007). When a party fails to exhaust their administrative remedies by appealing a final agency decision to the Appellate Division, their claims must generally be dismissed. Riggs v. Twp. of Long Beach, 101 N.J. 515, 525 (1986) (discussing "the general rule that courts should not entertain an action at law 'as long as

17

there is available a right of review before an administrative agency which has not been exhausted'" (citing R. 4:69-5)); K. Hovnanian Cos. of N. Cent. Jersey, Inc. v. N.J. Dep't of Env't Prot., 379 N.J. Super. 1, 10 (App. Div. 2005) (upholding the dismissal of a complaint for failure to exhaust administrative remedies). But see Columbia Fruit Farms, Inc. v. Dep't of Cmty. Affs., 470 N.J. Super. 25, 36 (App. Div. 2021) (explaining that "the Supreme Court has noted 'that the preference for exhaustion of administrative remedies is one of convenience, not an indispensable pre-condition.'" (quoting Abbott v. Burke, 100 N.J. 269, 297 (1985)) (internal quotation marks omitted)).

Moreover, when the time for filing an appeal from a final agency decision has expired, the decision by the agency becomes final and is not subject to further review. R. 2:4-1(b) (explaining that "[a]ppeals from final decisions or actions of state administrative agencies or officers . . . shall be taken within [forty-five] days from the date of service of the decision or notice of the action taken"); Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (stating that "[w]here the appeal is untimely [under Rule 2:4-1], the Appellate Division has no jurisdiction to decide the merits of the appeal" (quoting In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990)) (internal quotation marks omitted)).

18

In this matter, plaintiffs are seeking damages related to their delayed enrollment in the DCR Program. Their exclusive remedy was an administrative remedy before the Division and Trustees. Because plaintiffs did not appeal the Trustees' final agency decision, they have no right to collaterally attack that decision and seek a remedy in the Law Division. See D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 16 (App. Div. 2008) (holding that the Law Division lacked jurisdiction from the outset to hear an appeal from an administrative agency decision (citing R. 2:2-3(a)(2))).

Plaintiffs argue that they should have a legal remedy because there is no administrative remedy. See Musconetcong Watershed Ass'n v. N.J. Dept. of Env't Prot., 476 N.J. Super. 465, 479 (App. Div. 2023) (explaining that the doctrine of exhaustion of administrative remedies "is not absolute and '[e]xceptions are made when the administrative remedies would be futile'" (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 261 (2015)) (internal quotation marks omitted)). That argument as applied to the DCR Program, however, is tautological and inconsistent with the statute and regulations governing the DCR Program. The Trustees ruled that the governing statute did not authorize them to require the Board to pay for alleged lost interest or investment income. That ruling is not before us on appeal. In other words, that

ruling became final when plaintiffs did not file a timely appeal from the Trustees' final agency decision to this court.

That plaintiffs do not have an administrative remedy does not mean they have some other legal or equitable remedy that can be given by a court. In that regard, plaintiffs do not contend that the CBA provides them with any legal rights or remedies. Further, they acknowledge that collective agreements involving public employees do not allow for contractual provisions governing public employee pension rights. See State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 83 (1978) (stating that "[t]he Legislature has determined that the entire subject matter of public employee pensions is to be insulated from negotiated agreement which would contravene or supplement its comprehensive regulation . . . "); In re Morris Sch. Dist. Bd. of Educ., 310 N.J. Super. 332, 339-40 (App. Div. 1998) (explaining that "[p]ublic employees and employee representatives may neither negotiate nor agree upon any proposal that would affect the subject of employee pensions"); N.J.S.A. 34:13A-8.1.

Instead, plaintiffs allege that they have individual contracts, separate and apart from the CBA, which give them a contractual right to recover damages due to their delayed enrollment in the DCR Program. The flaw with that argument is twofold. First, plaintiffs have not identified and never produced the alleged

individual contracts. In other words, plaintiffs have not presented sufficient evidence to establish the existence of any individual agreements with defendants. See Troy v. Rutgers, 168 N.J. 354, 358 (2001) (noting that the plaintiffs were required to present sufficient evidence of the existence of their alleged individual agreements). Accordingly, we reject plaintiffs' argument that they should be permitted more time to produce the contracts.

Moreover, like collective agreements, individual employment contracts with public employees cannot include provisions that govern or alter public employee pension rights. See In re Morris Sch. Dist. Bd. of Educ., 310 N.J. Super. at 339. In this regard, we have recently explained:

> "[P]ension statutes are 'remedial in character' and 'should be liberally construed and administered in favor of the persons intended to be benefited thereby.'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 34 (2009) (quoting Geller v. N.J. Dep't of Treasury, 53 N.J. 591, 597-98 (1969)). "However, '[i]n spite of liberal construction, an employee has only such rights and benefits as are based upon and within the scope of the provisions of the statute.'" Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 349 (App. Div. 2010) (alteration in original) (quoting Casale v. Pension Comm'n of Emps.' Ret. Sys. of Newark, 78 N.J. Super. 38, 40 (Law Div. 1963)).
>
> [Caucino v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 475 N.J. Super. 405, 412-13 (App. Div. 2023) (citations reformatted).]

As already discussed, the statute and regulations governing the DCR Program vest the director of the Division, or plan administrator, with "full power and discretionary authority to construe and interpret the provisions of the [DCR] Program . . . and to adjudicate claims thereunder." N.J.A.C. 17:6-20.9. Accordingly, plaintiffs cannot argue that their alleged individual agreements somehow broaden their rights under the statute and allow them to pursue their claims for lost interest or investment income before the Law Division.

## III.

Having held that plaintiffs' sole remedy was administrative, and because the Trustees have ruled there is no statutory right to the alleged lost interest or investment income, all the parties' other arguments are moot. See Gannett Satellite Info. Network, LLC v. Twp. of Neptune, 467 N.J. Super. 385, 398 (App. Div. 2021) (explaining that an issue is moot when a decision "can have no practical effect on the existing controversy"), aff'd as modified, 254 N.J. 242 (2023).

## IV.

In summary, we affirm the portion of the June 7, 2024 order that denied plaintiffs' motion to reinstate their complaint. We reverse the order that denied the Board's motion to dismiss plaintiffs' complaint with prejudice. We remand

and direct the Law Division to enter an order dismissing plaintiffs' complaint with prejudice.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

23