251 N.J. Super. 379 (1990)
598 A.2d 518
BOARD OF EDUCATION OF THE TOWNSHIP OF BLOOMFIELD, PLAINTIFF-RESPONDENT,
v.
BLOOMFIELD EDUCATION ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1990.
Decided December 4, 1990.
*380 Before Judges BRODY, GRUCCIO and D'ANNUNZIO.
Tanya E. Pushnack argued the cause for appellant (Zazzali, Zazzali, Fagella & Nowak, attorneys).
Nathanya G. Simon argued the cause for respondent (Schwartz, Pisano, Simon, Edelstein & Ben-Asher, attorneys).
PER CURIAM.
Defendant Bloomfield Education Association (the Association) appeals from an order of the Chancery Division permanently enjoining arbitration of a health insurance coverage dispute with plaintiff Board of Education of the Township of Bloomfield (the Board). The Association represents the teachers employed by the Board. Under the contract agreed to by the parties for the 1986-1988 school years, disputes concerning the contract's conditions of employment and their interpretation were subject to resolution through a grievance process. At the *381 conclusion of the grievance process, the Association, if dissatisfied, could choose to submit the dispute to arbitration.
Article 28 of the contract provided for health insurance coverage for all teachers:
A. The Board of Education will pay the premium for each employee and his/her eligible dependents (full family coverage) limited to one family premium for the head of household, when more than one member is employed in the District who enrolls in the health-care insurance programs provided by the Board of Education.
B. Provisions of the health-care insurance program shall be detailed in master policies on file in the Board of Education office and in individual certificates issued to those employees who enroll. The provisions of the health-care insurance program shall include:
1. Hospital room and board and miscellaneous covered charges.
2. Out-patient benefits.
3. Laboratory fees, diagnostic expenses and therapy treatment.
4. Maternity costs.
5. Surgical costs.
6. Major medical.
7. The Board will continue to pay the full premium cost for employee dental and prescription insurance coverage except as modified below.
8. The Board's contribution toward the cost of family dental insurance shall not exceed a maximum of $325 per year per family enrollee.
9. The prescription insurance plan shall be a $2.00 co-pay plan. The Board will pay the premium cost.
10. The Major Medical insurance program shall include a catastrophic coverage Rider to cover one hundred percent (100%) payment after $5,000. The Major Medical deductible shall be $200 per person.
11. In 1987-88 the Board will make available $30,000 to maintain the dental plan and/or improve existing insurance benefits.
C. The Board will not be required to pay insurance premiums for teachers on unpaid leaves of absence. Teachers on unpaid leaves of absence may continue in the insurance program (where permitted by the carrier) by reimbursing the Board for the cost of premiums. Reimbursement shall be made prior to the premium date.
Pursuant to Article 28, the Board timely paid health insurance premiums to the health insurance carrier, Group Health Insurance of New Jersey (G.H.I.). In September 1987, G.H.I. notified the Board that it had been declared insolvent "and placed into receivership under the control of the Commissioner of Insurance of the State of New Jersey."
*382 Although the Board had obtained coverage through a new carrier, effective August 1, 1987, teachers' claims for covered medical expenses which had accrued prior to that date and were G.H.I.'s responsibility remained unpaid. The Association, on behalf of its affected members, looked to the Board to satisfy those claims. By letter dated March 10, 1989, the Board Secretary informed the Association "that the Board has no obligation regarding these outstanding sums as I think the Board has met the obligations by paying the required premiums for this coverage." The Association responded by filing a grievance which it defined as "the failure of the Board to provide medical and related insurance benefits as required by Article 28 of the contract."
The Board rejected the grievance and the Association filed a demand for arbitration with the American Arbitration Association. The arbitration demand described the controversy as a "[d]ispute over coverage of medical and health insurance," and demanded as remedy, "[b]oard to cover medical costs incurred by teaching staff."
The arbitration clause provided:
If the association is not satisfied with the disposition of the grievance at Level 3, or if no decision has been rendered within the fifteen (15) days after the grievance was delivered to the Board, it may, within five (5) days after a decision by the Board or twenty (20) days after the grievance was delivered to the Board, whichever is sooner, submit the grievance to arbitration through the American Arbitration Association, with a copy to the Board. The parties shall then be bound by the rules and procedures of the American Arbitration Association.
The arbitrator's decision shall be in writing and shall set forth his findings of fact, reasoning and conclusions on the issues submitted. The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement. The arbitrator cannot add to, modify, or delete from the contract. The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties.
The Board responded to the Association's arbitration demand by commencing this action to enjoin the arbitration. In the Chancery Division, the Board contended that the dispute was not arbitrable because the collective bargaining agreement *383 merely obligated the Board to pay premiums, which it did pay. Thus, contended the Board, an arbitrator's finding that the Board was obligated to provide or guarantee coverage would constitute a modification of the contract which the arbitration clause prohibits.
The Board also contended that the remedy the Association sought would result in a self-insurance scheme which would be ultra vires and, therefore, also beyond the arbitrator's authority to order under the contract. In support of this contention the Board relied on Irvington Ed. Assoc. v. Bd. of Ed. of the Township of Irvington, A-4805-82T5 (App.Div., decided Feb. 9, 1984), an unpublished opinion in which this court affirmed a ruling by the State Board of Education[1] that boards of education lacked statutory authority to self-insure a health benefits program. See N.J.S.A. 18A:16-13.
The Chancery Division agreed with both of the Board's contentions and entered judgment enjoining arbitration. We now reverse.
The parties agree that health benefits are proper subjects of collective bargaining, see 18A:16-16 to 22, and, therefore, are proper subjects for arbitration if the collective bargaining agreement requires arbitration. Thus, the issue in the present case is one of contractual arbitrability. See Ridgefield Park Ed. Ass'n. v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 153-154, 393 A.2d 278 (1978). Whether the parties are contractually obligated to arbitrate a particular dispute is a matter for judicial resolution. Id. at 155, 393 A.2d 278.
The judiciary's role in the enforcement of an arbitration clause was clearly and cogently described in Clifton Bd. of Ed. v. Clifton Teachers Ass'n., 154 N.J. Super. 500, 503-504, 381 A.2d 1226 (App.Div. 1977):

*384 The duty to arbitrate springs from contract, and the parties can only be compelled to arbitrate those matters which are within the scope of the arbitration clause of their contract. Moreira Constr. Co., Inc. v. Wayne Tp., 98 N.J. Super. 570 [238 A.2d 185] (App.Div. 1968), certif. den. 51 N.J. 467 (1968); Wm. J. Burns, etc., Inc. v. N.J. Guards Union, Inc., 64 N.J. Super. 301 [165 A.2d 844] (App.Div. 1960), certif. den. 34 N.J. 464 [169 A.2d 742] (1961); Harsen v. West Milford Tp. Bd. of Ed., 132 N.J. Super. 365 [333 A.2d 580] (Law Div. 1975). When there is a dispute as to whether a grievance falls within the terms of the arbitration clause of the contract, it is the duty of the courts to determine whether the matter is arbitrable. Moreira Constr. Co., Inc. v. Wayne Tp., supra; Wm. J. Burns, etc., Inc. v. N.J. Guards Union, Inc., supra. However, in determining whether a matter is arbitrable, the court is limited to ascertaining whether the party seeking arbitration is making a claim which, on its face, is covered by the contract and within the arbitration clause. The court may not, in any way, pass upon the merits of the actual dispute. Jersey Central Power & Light Co. v. Local Union No. 1289, etc., 38 N.J. 95, 104 [183 A.2d 41] (1962); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343 [1347], 4 L.Ed.2d 1403 (1960). If the arbitrator is found to have jurisdiction over a matter, the court must send it to arbitration, even though the court may think the dispute is patently frivolous. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347 [1353], 4 L.Ed.2d 1409 (1960).
In the present case, the agreement authorized the Association to submit a grievance to arbitration. The agreement defined a grievance as:
A claim based upon an event or condition which affects the terms and conditions of employment as stated in this contract of an employee or group of employees and/or the interpretation, meaning or application of any of the provisions of this Agreement.
The grievance in this case qualifies for arbitration in two respects: health benefits are a term and condition of employment and the grievance requires an interpretation of Article 28.
In enjoining arbitration, the Chancery Division ruled on the merits of the dispute by interpreting Article 28. The Judge ruled "that the meaning of the disputed provision is clearly the plain facial meaning merely of paying the premium to the carrier." In doing so the trial judge exceeded his authority as defined in Ridgefield Park and Clifton, both supra, and cases cited therein. Cf. Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 224, 405 A.2d 393 (1979) (arbitrator's award upheld where arbitrator's findings are fully supportable in the record, his interpretation is reasonably debatable and his conclusion is *385 fairly arguable); accord Bd. of Ed. of Woodstown-Pilesgrove Sch. v. Woodstown-Pilesgrove Ed. Ass'n., 81 N.J. 582, 410 A.2d 1131 (1980).
The parties empowered an arbitrator to address and determine the merits of a grievance. Arbitration is the parties' preferred method of dispute resolution for grievances within the arbitration clause. Collectively bargained for arbitration is also the Legislature's preferred method of dispute resolution. N.J.S.A. 34:13A-5.3.[2] Arbitration may not be denied merely because a court deems the claim to be frivolous. This principle and its rationale are well established in American labor jurisprudence:
The collective agreement requires arbitration of claims that courts might be unwilling to entertain. In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. Yet, the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious. There is no exception in the "no strike" clause and none therefore should be read into the grievance clause since one is the quid pro quo for the other. The question is not whether in the mind of the court there is equity in the claim. Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement.
United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).
We adopted this theme in Neptune City Bd. of Ed. v. Neptune City Ed. Ass'n., 153 N.J. Super. 406, 379 A.2d 1281 (App.Div. 1977). After noting the strong public policy favoring arbitration of labor disputes, we observed that policy to be "clearly a matter of special imperative in labor disputes involving public employees from whom the right to strike has been withheld and for whom, accordingly, negotiation and arbitration constitute their primary recourse for the settlement of their disputes with management." Id. at 409, 379 A.2d 1281. As Justice Douglas wisely observed, "[t]he processing of even *386 frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." United Steelworkers v. American Mfg. Co., supra 363 U.S. at 568, 80 S.Ct. at 1346-1347 (footnote omitted).
The chancery judge also ruled that the remedy sought by the Association was "tantamount to turning the Board into a self-funded insurer, an act which I find is prohibited by law...." In so ruling, the judge, as previously indicated, relied on an unpublished opinion of this court holding that boards of education did not have the statutory authority to self-fund health benefits coverage. Irvington Ed. Assoc. v. Bd. of Ed. Tsp. of Irvington, supra.
We reject the application of Irvington as a basis for denying arbitration. Judicial consideration of Irvington's impact is premature.[3] The arbitrator may decide that the Association's claim is invalid. On the other hand, even if the claim is upheld, the arbitrator may fashion a remedy which does not implicate Irvington concerns. Moreover, the Association conceded at oral argument that Irvington's applicability will be ripe for consideration by the judiciary in the event the arbitrator rules in the Association's favor, because, inter alia, the arbitration clause prohibits the arbitrator from making "any decision which requires the commission of an act prohibited by law...." Cf. Cty. Coll. of Morris Staff v. Cty. Coll. of Morris, 100 N.J. 383, 495 A.2d 865 (1985).
Finally, the Board contends that the dispute is not arbitrable because the Association failed to meet grievance procedure deadlines. In its Chancery Division complaint, the Board alleged that the grievance was filed in March 1989, eighteen months after the Board's September 22, 1987 memorandum to its employees which advised them of G.H.I.'s insolvency. According *387 to the Board's complaint, the grievance was untimely because it was not presented "within thirty (30) days of the occurrence or of when the grievant should have known of the occurrence," as required in the agreement's grievance procedure.
Although the trial court did not reach the timeliness issue, we conclude that the record below does not support the Board's contention that the 1987 memorandum addressed, raised or implicated the Board's obligation, if any, to pay claims not paid by G.H.I. The limited record suggests that when the memorandum was written, no one knew the extent to which the claims would remain unpaid. The memorandum advised the employees that "the Blue Cross Organization" had been brought in "to help determine outstanding claims and to process such claims through payment."
The Board also contends that the arbitration demand of May 12, 1989 was untimely under the agreement because the Board had rejected the grievance by letter dated April 25, 1989. The agreement required submission of a grievance to arbitration within five days after a Board decision. Although the Board advanced this contention in its trial court brief, the Board did not plead it in its complaint, and, therefore, we shall not address it.[4] Of course, the Board may raise timeliness issues *388 before the arbitrator. See Bd. of Ed. Woodstown-Pilesgrove School, supra, 81 N.J. at 595-596, 410 A.2d 1131.
Reversed.
NOTES
[1] 1983 S.L.D. 1571 (State Bd. of Ed.; May 4, 1983), affirming 1982 S.L.D. 1017 (Comm'r. of Ed.; Oct. 15, 1982).
[2] The statute provides in part:

Grievance and disciplinary review procedures established by agreement ... shall be utilized for any dispute covered by the terms of such agreement.
[3] We stress that this opinion is not to be interpreted as implying approval or disapproval of the ruling in Irvington or that ruling's applicability or inapplicability to the Association's claim in the present case.
[4] Because the Board did not plead the timeliness of the arbitration demand, and did not establish the late-filing of the initial grievance we need not address whether issues of procedural arbitrability are for the court or the arbitrator. The Board cites decisions outside the context of labor relations in which the courts decided procedural arbitrability, e.g., Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 403 A.2d 448 (1971); Brick Twsp. Mun. Util. Auth. v. Diversified R.B. & T. Construction Co., Inc., 171 N.J. Super. 397, 409 A.2d 806 (App.Div. 1979). On the other hand, the federal courts suggest that in a labor relations context procedural issues are for the arbitrator. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-558, 84 S.Ct. 909, 918-919, 11 L.Ed.2d 898 (1964) (procedural questions should be left to the arbitrator except in rare cases); Local 4-447 v. Chevron Chemical Co., 815 F.2d 338 (5th Cir.1987) (timeliness of arbitration demand for arbitrator); International Union of Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972) (a claim the particular grievance barred by laches was arbitrable where agreement to arbitrate extends to "any difference" between parties).