NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2448-14T2

JOHN S. PATTERSON and STELLA
PATTERSON, Individually and
as Joint Tenants,

 Plaintiffs-Respondents,

v.

LADENBURG THALMANN & CO. INC.,

 Defendant-Appellant.
___________________________________

 Submitted September 24, 2015 – Decided February 4, 2016

 Before Judges Ostrer and Haas.

 On appeal from the Superior Court of New
 Jersey, Law Division, Ocean County, Docket
 No. L-1435-14.

 Sallah Astarita & Cox, LLC, attorneys for
 appellant (Mark J. Astarita and Michael D.
 Handelsman, on the briefs).

 DeVita & Associates, and Timothy J. Dennin
 of the New York bar, admitted pro hac vice,
 attorneys for respondents (Richard Daniel De
 Vita and Mr. Dennin, on the brief).

PER CURIAM

 Defendant Ladenburg Thalmann & Co., Inc. (Ladenburg)

appeals from a December 19, 2014, order denying, without

prejudice, its motion to compel arbitration and stay

proceedings.
 Plaintiffs John S. and Stella C. Patterson filed their

complaint in May 2014 alleging breach of contract, conversion,

fraud, and related causes of action arising out of their

dealings with Mark C. Hotton while he was a broker at Ladenburg

and Ladenburg Capital Management, Inc., from 1997 to 2005.

Plaintiffs alleged that in July 2013, Hotton pleaded guilty in

federal court to a "massive multi-million dollar money

laundering scheme spanning a period of 17 years," which included

the time he worked at Ladenburg. Plaintiffs alleged Hotton's

misdeeds continued after he left Ladenburg for Oppenheimer Co.,

Inc. Plaintiffs contended they discovered irregularities in

their Oppenheimer accounts, which led to an arbitration and

subsequent confidential settlement with Oppenheimer.

Disclosures made in that arbitration, and plaintiffs' subsequent

investigation, led to their discovery of Hotton's fraudulent

conduct while at Ladenburg. Plaintiffs' action sought to hold

Ladenburg responsible for its former broker's alleged

wrongdoing.

 In lieu of an answer, Ladenburg filed a motion to dismiss

on statute of limitations and laches grounds. Plaintiffs

opposed the motion, arguing, among other things, the limitations

period was tolled by the discovery rule. On October 24, 2014,

the court denied the motion without prejudice.

 2 A-2448-14T2
 The next month, Ladenburg filed its answer asserting as an

affirmative defense that plaintiffs' claims were subject to

binding arbitration. Ladenburg also filed a motion to compel

arbitration and stay plaintiffs' action.

 In support of its motion, Ladenburg provided two affidavits

of Robert Mateicka, Ladenburg's chief compliance officer. The

purpose of the affidavits was to present evidence of an

arbitration contract. However, both affidavits were based on

"information and belief" as well as personal knowledge.

Mateicka stated in each, "I am fully familiar with the facts set

forth herein from my own personal experience [and] knowledge,

except for those which are stated upon information and belief.

As to those statements, I believe them to be true based on my

review of the documents and records related to this matter."

 Attached to Mateicka's first affidavit was what he

described as "a copy of the brokerage account application which

was being used by Ladenburg during the relevant time period."

The application was fifteen pages long; the fields were not

filled in. Page one contained the following instruction:

"Before signing the Brokerage Account Application, please

carefully read the Brokerage Account Customer Agreement. All

account holders must sign their name." Page seven, the

signature page, contained this acknowledgment:

 3 A-2448-14T2
 I represent that I have read the terms and
 conditions governing this account and agree
 to be bound by such terms and conditions as
 currently in effect and as may be amended
 from time to time. This account is governed
 by a pre-dispute arbitration agreement which
 appears on page 15.

 I acknowledge receipt of the pre-dispute
 arbitration agreement.

Page seven is followed by several pages of fields to be

completed by the customer.

 A section titled, "Brokerage Account Pre-Dispute

Arbitration Agreement" appears on page fifteen. There is no

separate signature line on page fifteen. The arbitration clause

states, in all caps:

 Brokerage Account Pre-Dispute Arbitration
 Agreement

 I am aware of the following:

 (A) Arbitration is final and binding on the
 parties.

 (B) The parties are waiving their right to
 seek remedies in court, including the
 right to jury trial.

 (C) Pre-arbitration discovery is generally
 more limited than and different from
 court proceedings.

 (D) The arbitrators' award is not required
 to include factual findings or legal
 reasoning and any party's right to
 appeal or to seek modification of
 rulings by the arbitrators is strictly
 limited.

 4 A-2448-14T2
 (E) The panel of arbitrators will typically
 include a minority of arbitrators who
 were or are affiliated with the
 securities industry.

 I agree that all controversies that may
 arise between us concerning any order or
 transaction, or the continuation,
 performance or breach of this or any other
 agreement between us, whether entered into
 before, on, or after the date this account
 is opened, shall be determined by
 arbitration before a panel of independent
 arbitrators set up by either the New York
 Stock Exchange, Inc., or National
 Association of Securities Dealers, Inc., as
 I may designate. If I do not notify you in
 writing within five (5) days after I receive
 from you a written demand for arbitration,
 then I authorize you to make such a
 designation on my behalf. I understand that
 judgment upon any arbitration award may be
 entered in any court of competent
 jurisdiction.

 [(Emphasis added).]

 The second attachment to Mateicka's first affidavit was a

page seven signature page executed by plaintiffs on April 28,

2005. This page is identical to the page seven in the blank

application described above, including the acknowledgment of

receipt of the "pre-dispute arbitration agreement which appears

on page 15." Plaintiffs' signed signature page identifies an

account number ending with 7722. Mateicka's affidavit alleged

the signature page was included in plaintiffs' brokerage account

application for that account.

 5 A-2448-14T2
 Plaintiffs opposed Ladenburg's arbitration motion, arguing

the contract Ladenburg presented was incomplete since only

plaintiffs' signature page was presented, and not the rest of

the actual application. Plaintiffs noted that the forms were

dated in 2004, which could not have been used for accounts

plaintiffs opened in 2002 and 2003. Several pages in the blank

application attached to Mateicka's affidavit bear the date

"02/04" at the bottom of the page. Plaintiffs also argued the

arbitration language was ambiguous, and that Ladenburg had

waived its right to invoke the arbitration provision by first

filing a motion to dismiss.

 However, plaintiffs did not present any certification

denying that they signed the page seven that Mateicka presented.

They also did not deny that when they signed page seven, they

received the entire Customer Agreement, which included the

arbitration agreement on page fifteen.

 In Mateicka's second affidavit, he explained that

Ladenburg's standard practice was to open a new account only

after a completed brokerage account application (which would

include the arbitration agreement) was submitted. He also

stated Ladenburg's standard practice is to "only retain portions

of new brokerage account applications and pre-dispute

arbitration agreements, including the signature page." He

 6 A-2448-14T2
asserted Ladenburg is required by "17 C.F.R. 240-17a-4(a)" to

retain only certain portions of account applications, including

the signature page, for "a period of six years." See 17 C.F.R.

§ 240.17a-4(a) (requiring certain records to be "preserve[d] for

a period of not less than six years"). Mateicka attached

"Plaintiffs' account verification forms" from 2003, which

referred to four different account numbers. One account number

appears to match the nine-figure account number on the signature

page plaintiffs signed on April 28, 2005.

 The trial judge denied without prejudice Ladenburg's motion

to compel arbitration. The court relied on Ladenburg's failure

to present a complete copy of the actual agreement plaintiffs

signed. The court noted that the signed page seven was the only

document that identified plaintiffs as contracting parties. The

court agreed this signed page matched the page seven of the

blank application. Ladenburg's counsel had apparently agreed,

in response to the judge's request, to submit a copy of the full

agreement plaintiffs signed. The judge, in his decision, noted

the full agreement had not yet been submitted.

 The court also rejected plaintiffs' argument that the

arbitration language was confusing or ambiguous. However, the

court was unprepared to conclude that the arbitration agreement

plaintiffs allegedly signed in 2005 "relate[d] back" to prior

 7 A-2448-14T2
years' agreements. Finally, the court declined to decide

plaintiffs' claim that Ladenburg waived its right to seek

arbitration.

 This appeal followed. Ladenburg argues the parties entered

into a valid and unambiguous arbitration agreement. Ladenburg

notes that plaintiffs submitted no competent evidence to dispute

Mateicka's assertion that they signed an agreement containing

the arbitration clause on page fifteen.

 We exercise plenary review of the trial court's decision

regarding the existence and applicability of an arbitration

agreement. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186

(2013); Bd. of Educ. of Bloomfield v. Bloomfield Educ. Ass'n,

251 N.J. Super. 379, 383 (App. Div. 1990), aff'd, 126 N.J. 300

(1991); Moreira Constr. Co. v. Twp. of Wayne, 98 N.J. Super.

570, 575 (App. Div.), certif. denied, 51 N.J. 467 (1968).

 Whether an arbitration agreement was formed is determined

under general contract principles. Leodori v. CIGNA Corp., 175

N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L.

Ed. 2d 250 (2003). A court may not "subject an arbitration

agreement to more burdensome requirements than those governing

the formation of other contracts." Ibid. We consider

"the contractual terms, the surrounding circumstances, and the

 8 A-2448-14T2
purpose of the contract." Hirsch, supra, 215 N.J. at 188

(internal quotation marks and citation omitted).

 In interpreting an arbitration agreement, we are mindful

that arbitration is considered "a favored method for resolving

disputes." Garfinkel v. Morristown Obstetrics & Gynecology

Assocs., P.A., 168 N.J. 124, 131 (2001). At the same time, the

policy favoring arbitration is "not without limits," and

"neither party is entitled to force the other to arbitrate their

dispute" unless both parties agreed to do so. Id. at 132.

"[T]he [Federal Arbitration Act] specifically permits states to

regulate . . . contracts containing arbitration agreements under

general contract principles . . . ." Martindale v. Sandvik,

Inc., 173 N.J. 76, 85 (2002) (internal quotation marks and

citation omitted).

 We agree that Ladenburg failed to present sufficient,

competent evidence of an arbitration agreement with plaintiffs.

However, we reach that conclusion for different reasons than

those expressed by the trial court.1 Ladenburg relied on an

affidavit by Mateicka that purported to be both based on

personal knowledge and "upon information and belief," without

1
 See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011)
(stating an appellate court is "free to affirm the trial court's
decision on grounds different from those relied upon by the
trial court").

 9 A-2448-14T2
distinguishing between the two. This fails to comply with Rule

1:6-6, which governs the presentation of evidence on motions.

The Rule requires affidavits supporting motions to be based "on

personal knowledge, setting forth only facts which are

admissible in evidence to which the affiant is competent to

testify." See also Jacobs v. Walt Disney World, Co., 309 N.J.

Super. 443, 454 (App. Div. 1998) (factual assertions based

merely upon "information and belief" are inadequate); Lippmann

v. Hydro-Space Tech., Inc., 77 N.J. Super. 497, 504 (App. Div.

1962) (verification "to the best of the knowledge and belief of

[the] deponent" is defective).

 Had Mateicka's "affidavit" complied with the Rule,

Ladenburg would have presented sufficient evidence of a binding

agreement to arbitrate. Plaintiffs signed page seven,

acknowledging their "account is governed by a pre-dispute

arbitration agreement which appears on page 15" and that they

had received the arbitration agreement. Plaintiffs did not

provide a certification or any other evidence showing that they

did not execute the fifteen-page agreement that Ladenburg

submitted in blank form. As noted above, plaintiffs' signed

page seven is identical to page seven of the fifteen-page

agreement.

 10 A-2448-14T2
 We recognize that the proponent of an arbitration agreement

bears the burden to prove its existence. Merrill Lynch, Pierce,

Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super.

45, 59 (App. Div.), certif. denied, 212 N.J. 460 (2012).

However, Ladenburg was not required to produce the complete

original document that plaintiffs signed in order to prove the

contents of their agreement. See N.J.R.E. 1004 ("The original

is not required and other evidence of the contents of a writing

. . . is admissible if . . . [a]ll originals are lost or have

been destroyed, unless the proponent lost or destroyed them in

bad faith"). Plaintiffs signed page seven, which expressly

incorporated the arbitration agreement on page fifteen.

Competent uncontradicted testimony that Ladenburg would not have

accepted plaintiffs' account agreement without the other pages

would be persuasive evidence of the contents of the entire

agreement. Further, plaintiffs signed the representation on

page seven, which states, "I have read, understood and agreed to

the terms set forth in the Customer Agreement herein." The

Customer Agreement includes the arbitration provision on page

fifteen.

 It is immaterial that the arbitration clause appeared on a

different page of the agreement than the page plaintiffs signed.

Contracting parties "may agree to arbitrate their disputes by

 11 A-2448-14T2
referring generally to an arbitration policy contained in a

separate writing, provided that the policy itself clearly

reflects . . . [a] knowing and voluntary waiver of rights."

Leodori, supra, 175 N.J. at 307. In sum, but for Ladenburg's

failure to comply with Rule 1:6-6, Ladenburg would have

established the existence of the arbitration agreement, given

plaintiffs' lack of evidence to the contrary. If Ladenburg lays

a proper foundation for plaintiffs' signed page seven and the

complete fifteen-page agreement, no other documents will be

needed to meet its burden.

 We also conclude the arbitration clause in the Customer

Agreement is unambiguous. In particular, the clause governs not

just disputes arising out of the account expressly identified in

the agreement, but also those arising out of "any other

agreement between us, whether entered into before, on, or after

the date this account is opened." Plaintiffs' arguments to the

contrary lack sufficient merit to warrant discussion. R. 2:11-

3(e)(1)(E).

 We affirm the order denying without prejudice Ladenburg's

motion to compel arbitration.

 12 A-2448-14T2